[No. S057125. Jan. 5, 1998.]

BIRBROWER, MONTALBANO, CONDON & FRANK, P.C., et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ESQ BUSINESS SERVICES, INC., Real Party in Interest.

## COUNSEL

Halley, Cornel & Lynch, Roger C. Peters, Hoge, Fenton, Jones & Appel, David P. Eby, William J. Elfving and Scott R. Mosko for Petitioners.

Latham & Watkins, Joseph A. Wheelock, Jr., and Julie V. King as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Hopkins & Carley, Jon Michaelson, Denisé Y. Yamamoto and Robert W. Ricketson for Real Party in Interest.

Diane C. Yu, Lawrence C. Yee, Mark Torres-Gil and Robert M. Sweet as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**CHIN, J.**—Business and Professions Code section 6125 states: "No person shall practice law in California unless the person is an active member of the State Bar."[1] We must decide whether an out-of-state law firm, not licensed to practice law in this state, violated section 6125 when it performed legal services in California for a California-based client under a fee agreement stipulating that California law would govern all matters in the representation.

Although we are aware of the interstate nature of modern law practice and mindful of the reality that large firms often conduct activities and serve clients in several states, we do not believe these facts excuse law firms from complying with section 6125. Contrary to the Court of Appeal, however, we do not believe the Legislature intended section 6125 to apply to those services an out-of-state firm renders in its home state. We therefore conclude that, to the extent defendant law firm Birbrower, Montalbano, Condon & Frank, P.C. (Birbrower), practiced law in California without a license, it engaged in the unauthorized practice of law in this state. (§ 6125.) We also conclude that Birbrower's fee agreement with real party in interest ESQ Business Services, Inc. (ESQ), is invalid to the extent it authorizes payment for the substantial legal services Birbrower performed in California. If, however, Birbrower can show it generated fees under its agreement for limited services it performed in New York, and it earned those fees under the otherwise invalid fee agreement, it may, on remand, present to the trial court evidence justifying its recovery of fees for those New York services. Conversely, ESQ will have an opportunity to produce contrary evidence. Accordingly, we affirm the Court of Appeal judgment in part and reverse it in part, remanding for further proceedings consistent with this opinion.

## I. BACKGROUND

The facts with respect to the unauthorized practice of law question are essentially undisputed. Birbrower is a professional law corporation incorporated in New York, with its principal place of business in New York. During 1992 and 1993, Birbrower attorneys, defendants Kevin F. Hobbs and Thomas A. Condon (Hobbs and Condon), performed substantial work in California relating to the law firm's representation of ESQ. Neither Hobbs nor Condon has ever been licensed to practice law in California. None of Birbrower's attorneys were licensed to practice law in California during Birbrower's ESQ representation.

ESQ is a California corporation with its principal place of business in Santa Clara County. In July 1992, the parties negotiated and executed the fee

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

agreement in New York, providing that Birbrower would perform legal services for ESQ, including "All matters pertaining to the investigation of and prosecution of all claims and causes of action against TANDEM COMPUTERS INCORPORATED [Tandem]." The "claims and causes of action" against Tandem, a Delaware corporation with its principal place of business in Santa Clara County, California, related to a software development and marketing contract between Tandem and ESQ dated March 16, 1990 (Tandem Agreement). The Tandem Agreement stated that "The internal laws of the State of California (irrespective of its choice of law principles) shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties hereto." Birbrower asserts, and ESQ disputes, that ESQ knew Birbrower was not licensed to practice law in California.

While representing ESQ, Hobbs and Condon traveled to California on several occasions. In August 1992, they met in California with ESQ and its accountants. During these meetings, Hobbs and Condon discussed various matters related to ESQ's dispute with Tandem and strategy for resolving the dispute. They made recommendations and gave advice. During this California trip, Hobbs and Condon also met with Tandem representatives on four or five occasions during a two-day period. At the meetings, Hobbs and Condon spoke on ESQ's behalf. Hobbs demanded that Tandem pay ESQ $15 million. Condon told Tandem he believed that damages would exceed $15 million if the parties litigated the dispute.

Around March or April 1993, Hobbs, Condon, and another Birbrower attorney visited California to interview potential arbitrators and to meet again with ESQ and its accountants. Birbrower had previously filed a demand for arbitration against Tandem with the San Francisco offices of the American Arbitration Association (AAA). In August 1993, Hobbs returned to California to assist ESQ in settling the Tandem matter. While in California, Hobbs met with ESQ and its accountants to discuss a proposed settlement agreement Tandem authored. Hobbs also met with Tandem representatives to discuss possible changes in the proposed agreement. Hobbs gave ESQ legal advice during this trip, including his opinion that ESQ should not settle with Tandem on the terms proposed.

ESQ eventually settled the Tandem dispute, and the matter never went to arbitration. But before the settlement, ESQ and Birbrower modified the contingency fee agreement.[2] The modification changed the fee arrangement from contingency to fixed fee, providing that ESQ would pay Birbrower

---

[2]Birbrower's brief refers to the "Fee Agreement" without specifying whether it means the original contingency agreement or the later modified fixed fee agreement. The operative fee

over $1 million. The original contingency fee arrangement had called for Birbrower to receive "one-third (1/3) of all sums received for the benefit of the Clients . . . whether obtained through settlement, motion practice, hearing, arbitration, or trial by way of judgment, award, settlement, or otherwise . . . ."

In January 1994, ESQ sued Birbrower for legal malpractice and related claims in Santa Clara County Superior Court. Birbrower removed the matter to federal court and filed a counterclaim, which included a claim for attorney fees for the work it performed in both California and New York. The matter was then remanded to the superior court. There ESQ moved for summary judgment and/or adjudication on the first through fourth causes of action of Birbrower's counterclaim, which asserted ESQ and its representatives breached the fee agreement. ESQ argued that by practicing law without a license in California and by failing to associate legal counsel while doing so, Birbrower violated section 6125, rendering the fee agreement unenforceable. Based on these undisputed facts, the Santa Clara Superior Court granted ESQ's motion for summary adjudication of the first through fourth causes of action in Birbrower's counterclaim. The court also granted summary adjudication in favor of ESQ's third and fourth causes of action in its second amended complaint, seeking declaratory relief as to the validity of the fee agreement and its modification. ■■■■ The court concluded that: (1) Birbrower was "not admitted to the practice of law in California"; (2) Birbrower "did not associate California counsel";[3] (3) Birbrower "provided legal services in this state"; and (4) "The law is clear that no one may recover compensation for services as an attorney in this state unless he or she was a member of the state bar at the time those services were performed."

Although the trial court's order stated that the fee agreements were unenforceable, at the hearing on the summary adjudication motion, the trial court also observed: "It seems to me that those are some of the issues that this Court has to struggle with, and then it becomes a question of if they aren't allowed to collect their attorney's fees here, I don't think that puts the attorneys in a position from being precluded from collecting all of their attorney's fees, only those fees probably that were generated by virtue of work that they performed in California and not that work that was performed in New York."

agreement that would be enforced is in dispute, and, as explained below, is subject to clarification on remand. To avoid confusion, we simply refer to one "fee agreement" for purposes of our analysis.

[3]Contrary to the trial court's implied assumption, no statutory exception to section 6125 allows out-of-state attorneys to practice law in California as long as they associate local counsel in good standing with the State Bar.

In granting limited summary adjudication, the trial court left open the following issues for resolution: ESQ's malpractice action against Birbrower, and the remaining causes of action in Birbrower's counterclaim, including Birbrower's fifth cause of action for quantum meruit (seeking the reasonable value of legal services provided).

Birbrower petitioned the Court of Appeal for a writ of mandate directing the trial court to vacate the summary adjudication order. The Court of Appeal denied Birbrower's petition and affirmed the trial court's order, holding that Birbrower violated section 6125. The Court of Appeal also concluded that Birbrower's violation barred the firm from recovering its legal fees under the written fee agreement, including fees generated in New York by the attorneys when they were physically present in New York, because the agreement included payment for California or "local" services for a California client in California. The Court of Appeal agreed with the trial court, however, in deciding that Birbrower could pursue its remaining claims against ESQ, including its equitable claim for recovery of its fees in quantum meruit.

We granted review to determine whether Birbrower's actions and services performed while representing ESQ in California constituted the unauthorized practice of law under section 6125 and, if so, whether a section 6125 violation rendered the fee agreement wholly unenforceable.

## II. DISCUSSION

### A. *The Unauthorized Practice of Law*

The California Legislature enacted section 6125 in 1927 as part of the State Bar Act (the Act), a comprehensive scheme regulating the practice of law in the state. (*J.W.* v. *Superior Court* (1993) 17 Cal.App.4th 958, 965 [22 Cal.Rptr.2d 527] (*J.W.*).) Since the Act's passage, the general rule has been that, although persons may represent themselves and their own interests regardless of State Bar membership, no one but an active member of the State Bar may practice law for another person in California. (*Ibid.*) The prohibition against unauthorized law practice is within the state's police power and is designed to ensure that those performing legal services do so competently. (*Id.* at p. 969.)

A violation of section 6125 is a misdemeanor. (§ 6126.) Moreover, "No one may recover compensation for services as an attorney at law in this state unless [the person] was at the time the services were performed a member of The State Bar." (*Hardy* v. *San Fernando Valley C. of C.* (1950) 99 Cal.App.2d 572, 576 [222 P.2d 314] (*Hardy*).)

**(3)** Although the Act did not define the term "practice law," case law explained it as " 'the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure.' " (*People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 535 [209 P. 363] (*Merchants*).) *Merchants* included in its definition legal advice and legal instrument and contract preparation, whether or not these subjects were rendered in the course of litigation. (*Ibid.*; see *People* v. *Ring* (1937) 26 Cal.App.2d. Supp. 768, 772-773 [70 P.2d 281] (*Ring*) [holding that single incident of practicing law in state without a license violates § 6125]; see also *Mickel* v. *Murphy* (1957) 147 Cal.App.2d 718, 721 [305 P.2d 993] [giving of legal advice on matter not pending before state court violates § 6125], disapproved on other grounds in *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 651 [320 P.2d 16, 65 A.L.R.2d 1358].) *Ring* later determined that the Legislature "accepted both the definition already judicially supplied for the term and the declaration of the Supreme Court [in *Merchants*] that it had a sufficiently definite meaning to need no further definition. The definition . . . must be regarded as definitely establishing, for the jurisprudence of this state, the meaning of the term 'practice law.' " (*Ring, supra,* 26 Cal.App.2d at p. Supp. 772.)

In addition to not defining the term "practice law," the Act also did not define the meaning of "in California." In today's legal practice, questions often arise concerning whether the phrase refers to the nature of the legal services, or restricts the Act's application to those out-of-state attorneys who are physically present in the state.

Section 6125 has generated numerous opinions on the meaning of "practice law" but none on the meaning of "in California." In our view, the practice of law "in California" entails sufficient contact with the California client to render the nature of the legal service a clear legal representation. In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state. Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law "in California." The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations.

Our definition does not necessarily depend on or require the unlicensed lawyer's physical presence in the state. Physical presence here is one factor we may consider in deciding whether the unlicensed lawyer has violated section 6125, but it is by no means exclusive. For example, one may practice law in the state in violation of section 6125 although not physically present here by advising a California client on California law in connection with a

California legal dispute by telephone, fax, computer, or other modern technological means. Conversely, although we decline to provide a comprehensive list of what activities constitute sufficient contact with the state, we do reject the notion that a person *automatically* practices law "in California" whenever that person practices California law anywhere, or "virtually" enters the state by telephone, fax, e-mail, or satellite. (See e.g., *Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 543 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036] (*Baron*) ["practice law" does not encompass all professional activities].) Indeed, we disapprove *Ring, supra,* 26 Cal.App.2d Supp. 768, and its progeny to the extent the cases are inconsistent with our discussion. We must decide each case on its individual facts.

This interpretation acknowledges the tension that exists between interjurisdictional practice and the need to have a state-regulated bar. As stated in the American Bar Association Model Code of Professional Responsibility, Ethical Consideration EC 3-9, "Regulation of the practice of law is accomplished principally by the respective states. Authority to engage in the practice of law conferred in any jurisdiction is not per se a grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where he is not permitted by law or by court order to do so. However, the demands of business and the mobility of our society pose distinct problems in the regulation of the practice of law by the states. In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice." (Fns. omitted.) *Baron* implicitly agrees with this canon. (*Baron, supra,* 2 Cal.3d at p. 543.)

If we were to carry the dissent's narrow interpretation of the term "practice law" to its logical conclusion, we would effectively limit section 6125's application to those cases in which nonlicensed out-of-state lawyers appeared in a California courtroom without permission. (Dis. opn., *post,* at pp. 142-144.) Clearly, neither *Merchants, supra,* 189 Cal. at page 535, nor *Baron, supra,* 22 Cal.3d at page 543, supports the dissent's fanciful interpretation of the thoughtful guidelines announced in those cases. Indeed, the dissent's definition of "practice law" ignores *Merchants* altogether, and, in so doing, substantially undermines the Legislature's intent to protect the public from those giving unauthorized legal advice and counsel.

Exceptions to section 6125 do exist, but are generally limited to allowing out-of-state attorneys to make brief appearances before a state court

or tribunal. They are narrowly drawn and strictly interpreted. For example, an out-of-state attorney not licensed to practice in California may be permitted, *by consent of a trial judge*, to appear in California in a particular pending action. (See *In re McCue* (1930) 211 Cal. 57, 67 [293 P. 47]; 1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 402, p. 493.)

In addition, with the permission of the California court in which a particular cause is pending, out-of-state counsel may appear before a court as counsel pro hac vice. (Cal. Rules of Court, rule 983.) A court will approve a pro hac vice application only if the out-of-state attorney is a member in good standing of another state bar and is eligible to practice in any United States court or the highest court in another jurisdiction. (Cal. Rules of Court, rule 983(a).) The out-of-state attorney must also associate an active member of the California Bar as attorney of record and is subject to the Rules of Professional Conduct of the State Bar. (Cal. Rules of Court, rules 983(a), (d); see Rules Prof. Conduct, rule 1-100(D)(2) [includes lawyers from other jurisdictions authorized to practice in this state].)

The Act does not regulate practice before United States courts. Thus, an out-of-state attorney engaged to render services in bankruptcy proceedings was entitled to collect his fee. (*Cowen* v. *Calabrese* (1964) 230 Cal.App.2d 870, 872 [41 Cal.Rptr. 441, 11 A.L.R.3d 903] (*Cowen*); but see U.S. Dist. Ct. Local Rules, Northern Dist. Cal., rule 11-1(b); Eastern Dist. Cal., rule 83-180; Central Dist. Cal., rule 2.2.1; Southern Dist. Cal., rule 83.3 c.1.a. [today conditioning admission to their respective bars (with certain exceptions for some federal government employees) on active membership in good standing in California State Bar].)

Finally, California Rules of Court, rule 988, permits the State Bar to issue registration certificates to foreign legal consultants who may advise on the law of the foreign jurisdiction where they are admitted. These consultants may not, however, appear as attorneys before a California court or judicial officer or otherwise prepare pleadings and instruments in California or give advice on the law of California or any other state or jurisdiction except those where they are admitted.

The Legislature has recognized an exception to section 6125 in international disputes resolved in California under the state's rules for arbitration and conciliation of international commercial disputes. (Code Civ. Proc., § 1297.11 et seq.) This exception states that in a commercial conciliation in California involving international commercial disputes, "The parties may appear in person or be represented or assisted by any person of their choice. A person assisting or representing a party need not be a member of the legal

profession or licensed to practice law in California." (Code Civ. Proc., § 1297.351.) Likewise, the Act does not apply to the preparation of or participation in labor negotiations and arbitrations arising under collective bargaining agreements in industries subject to federal law. (See e.g., *Teamsters Local* v. *Lucas Flour Co.* (1962) 369 U.S. 95, 103 [82 S.Ct. 571, 576-577, 7 L.Ed.2d 593]; see also Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a).)

B. *The Present Case*

The undisputed facts here show that neither *Baron*'s definition (*Baron, supra,* 2 Cal.3d at p. 543) nor our "sufficient contact" definition of "practice law in California" (*ante,* at pp. 128-129) would excuse Birbrower's extensive practice in this state. Nor would any of the limited statutory exceptions to section 6125 apply to Birbrower's California practice. As the Court of Appeal observed, Birbrower engaged in unauthorized law practice *in California* on more than a limited basis, and no firm attorney engaged in that practice was an active member of the California State Bar. As noted (*ante,* at p. 125), in 1992 and 1993, Birbrower attorneys traveled to California to discuss with ESQ and others various matters pertaining to the dispute between ESQ and Tandem. Hobbs and Condon discussed strategy for resolving the dispute and advised ESQ on this strategy. Furthermore, during California meetings with Tandem representatives in August 1992, Hobbs demanded Tandem pay $15 million, and Condon told Tandem he believed damages in the matter would exceed that amount if the parties proceeded to litigation. Also in California, Hobbs met with ESQ for the stated purpose of helping to reach a settlement agreement and to discuss the agreement that was eventually proposed. Birbrower attorneys also traveled to California to initiate arbitration proceedings before the matter was settled. As the Court of Appeal concluded, ". . . the Birbrower firm's in-state activities clearly constituted the [unauthorized] practice of law" *in California.*

Birbrower contends, however, that section 6125 is not meant to apply to *any* out-of-state *attorneys.* Instead, it argues that the statute is intended solely to prevent nonattorneys from practicing law. This contention is without merit because it contravenes the plain language of the statute. Section 6125 clearly states that *no person* shall practice law in California unless that person is a member of the State Bar. The statute does not differentiate between attorneys or nonattorneys, nor does it excuse a person who is a member of another state bar. It is well-settled that, in determining the meaning of a statute, we look to its words and give them their usual and ordinary meaning. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140]; *Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) "[I]f statutory language is 'clear

and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218 [188 Cal.Rptr. 115, 655 P.2d 317].)
▮ The plain meaning controls our interpretation of the statute here because Birbrower has not shown "that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act' or for some other compelling reason, should be disregarded . . . ." (*Id.* at pp. 218-219.)

Birbrower next argues that we do not further the statute's intent and purpose—to protect California citizens from incompetent attorneys—by enforcing it against out-of-state attorneys. Birbrower argues that because out-of-state attorneys have been licensed to practice in other jurisdictions, they have already demonstrated sufficient competence to protect California clients. But Birbrower's argument overlooks the obvious fact that other states' laws may differ substantially from California law. Competence in one jurisdiction does not necessarily guarantee competence in another. By applying section 6125 to out-of-state attorneys who engage in the extensive practice of law in California without becoming licensed in our state, we serve the statute's goal of assuring the competence of all attorneys practicing law in this state. (*J.W., supra,* 17 Cal.App.4th at p. 969.)

California is not alone in regulating who practices law in its jurisdiction. Many states have substantially similar statutes that serve to protect their citizens from unlicensed attorneys who engage in unauthorized legal practice. Like section 6125, these other state statutes protect local citizens "against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions." (*Spivak* v. *Sachs* (1965) 16 N.Y.2d 163 [263 N.Y.S.2d 953, 211 N.E.2d 329, 331].) Whether an attorney is duly admitted in another state and is, in fact, competent to practice in California is irrelevant in the face of section 6125's language and purpose. (See *Ranta* v. *McCarney* (N.D. 1986) 391 N.W.2d 161, 163 (*Ranta*) [noting that out-of-state attorney's competence is irrelevant because purpose of North Dakota law against unauthorized law practice is to assure competence *before* attorney practices in state].) Moreover, as the North Dakota Supreme Court pointed out in *Ranta*: "It may be that such an [out-of-state attorney] exception is warranted, but such a plea is more properly made to a legislative committee considering a bill enacting such an exception or to this court in its rule-making function than it is in a judicial decision." (*Id.* at p. 165.) Similarly, a decision to except out-of-state attorneys licensed in their own jurisdictions from section 6125 is more appropriately left to the California Legislature.

Assuming that section 6125 does apply to out-of-state attorneys not licensed here, Birbrower alternatively asks us to create an exception to section 6125 for work incidental to private arbitration or other alternative dispute resolution proceedings. Birbrower points to fundamental differences between private arbitration and legal proceedings, including procedural differences relating to discovery, rules of evidence, compulsory process, cross-examination of witnesses, and other areas. (See *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 57-58 [94 S.Ct. 1011, 1024-1025, 39 L.Ed.2d 147] [illustrating differences between arbitration and court proceedings].) As Birbrower observes, in light of these differences, at least one court has decided that an out-of-state attorney could recover fees for services rendered in an arbitration proceeding. (See *Williamson* v. *John D. Quinn Const. Corp.* (S.D.N.Y. 1982) 537 F.Supp. 613, 616 (*Williamson*).)

In *Williamson,* a New Jersey law firm was employed by a client's New York law firm to defend a construction contract arbitration in New York. It sought to recover fees solely related to the arbitration proceedings, even though the attorney who did the work was not licensed in New York, nor was the firm authorized to practice in the state. (*Williamson, supra,* 537 F.Supp. at p. 616.) In allowing the New Jersey firm to recover its arbitration fees, the federal district court concluded that an arbitration tribunal is not a court of record, and its fact-finding process is not similar to a court's process. (*Ibid.*) The court relied on a local state bar report concluding that representing a client in an arbitration was not the unauthorized practice of law. (*Ibid.*; see Com. Rep., Labor Arbitration and the Unauthorized Practice of Law (May/June 1975) 30 Record of the Association of the Bar of the City of New York, No. 5/6, p. 422 et seq.) But as amicus curiae the State Bar of California observes, "While in *Williamson* the federal district court did allow the New Jersey attorneys to recover their fees, that decision clearly is distinguishable on its facts. . . . [¶] In the instant case, it is undisputed that none of the time that the New York attorneys spent in California was" spent in arbitration; *Williamson* thus carries limited weight. (See also *Moore* v. *Conliffe* (1994) 7 Cal.4th 634, 637-638 [29 Cal.Rptr.2d 152, 871 P.2d 204] [private AAA arbitration functionally equivalent to judicial proceeding to which litigation privilege applies].) Birbrower also relies on California's rules for arbitration and conciliation of international commercial disputes for support. (Code Civ. Proc., § 1297.11 et seq.) As noted (*ante,* at pp. 130-131), these rules specify that, in an international commercial conciliation or arbitration proceeding, the person representing a party to the conciliation or arbitration is not required to be a licensed member of the State Bar. (Code Civ. Proc., § 1297.351.)

We decline Birbrower's invitation to craft an arbitration exception to section 6125's prohibition of the unlicensed practice of law in this state. Any

exception for arbitration is best left to the Legislature, which has the authority to determine qualifications for admission to the State Bar and to decide what constitutes the practice of law. (*Baron, supra,* 2 Cal.3d at pp. 540-541; see also *Eagle Indem. Co.* v. *Industrial Acc. Com.* (1933) 217 Cal. 244, 247 [18 P.2d 341].) Even though the Legislature has spoken with respect to *international* arbitration and conciliation, it has not enacted a similar rule for private arbitration proceedings. Of course, private arbitration and other alternative dispute resolution practices are important aspects of our justice system. (See *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899] [noting a strong public policy in favor of arbitration].) Section 6125, however, articulates a strong public policy favoring the practice of law in California by licensed State Bar members. In the face of the Legislature's silence, we will not create an arbitration exception under the facts presented. (See *Baron, supra,* 2 Cal.3d at pp. 540-541 [membership, character, and conduct of attorneys is proper subject of state legislative regulation and control].)[4]

In its reply brief to the State Bar's amicus curiae brief, Birbrower raises for the first time the additional argument that the Federal Arbitration Act (FAA) preempted the rules governing the AAA proposed arbitration and section 6125. The FAA regulates arbitration that deals with maritime transactions and contracts involving the transportation of goods through interstate or foreign commerce. (9 U.S.C. § 1 et seq.) Although we need not address the question under California Rules of Court, rule 29(b)(1), and note the parties' settlement agreement rendered the arbitration unnecessary, we reject the argument for its lack of merit. First, the parties incorporated a California choice-of-law provision in the Tandem Agreement, indicating they intended to apply California law in any necessary arbitration, and they have not shown that California law in any way conflicts with the FAA. Moreover, in interpreting the California Arbitration Act stay provisions (Code Civ. Proc., § 1281.2, subd. (c)), the high court observed that the FAA does not contain an express preemptive provision, nor does it "reflect a congressional intent to occupy the entire field of arbitration." (*Volt Info. Sciences* v. *Leland*

[4]The dissent focuses on an arbitrator's powers in an attempt to justify its conclusion that an out-of-state attorney may engage in the unlicensed representation of a client in an arbitration proceeding. (See dis. opn., *post,* at pp. 144-145.) This narrow focus confuses the issue here. An arbitrator's powers to enforce a contract or "award an essentially unlimited range of remedies" has no bearing on the question whether unlicensed out-of-state attorneys may represent California clients in an arbitration proceeding. (Dis. opn., *post,* at p. 145.) Moreover, any discussion of the practice of law in an arbitration proceeding is irrelevant here because the parties settled the underlying case before arbitration proceedings became necessary. Nonetheless, we emphasize that, in the absence of clear legislative direction, we decline to create an exception allowing unlicensed legal practice in arbitration in violation of section 6125.

*Stanford Jr. U.* (1989) 489 U.S. 468, 477 [109 S.Ct. 1248, 1255, 103 L.Ed.2d 488].)

Finally, Birbrower urges us to adopt an exception to section 6125 based on the unique circumstances of this case. Birbrower notes that "Multistate relationships are a common part of today's society and are to be dealt with in commonsense fashion." (*In re Estate of Waring* (1966) 47 N.J. 367 [221 A.2d 193, 197].) In many situations, strict adherence to rules prohibiting the unauthorized practice of law by out-of-state attorneys would be " 'grossly impractical and inefficient.' " (*Ibid.*; see also *Appell* v. *Reiner* (1964) 43 N.J. 313 [204 A.2d 146, 148] [strict adherence to rule barring out-of-state lawyers from representing New Jersey residents on New Jersey matters may run against the public interest when case involves inseparable multistate transactions].)

Although, as discussed (*ante,* at pp. 129-130), we recognize the need to acknowledge and, in certain cases, to accommodate the multistate nature of law practice, the facts here show that Birbrower's extensive activities within California amounted to considerably more than any of our state's recognized exceptions to section 6125 would allow. Accordingly, we reject Birbrower's suggestion that we except the firm from section 6125's rule under the circumstances here.

C. *Compensation for Legal Services*

Because Birbrower violated section 6125 when it engaged in the unlawful practice of law in California, the Court of Appeal found its fee agreement with ESQ unenforceable in its entirety. Without crediting Birbrower for some services performed in New York, for which fees were generated under the fee agreement, the court reasoned that the agreement was void and unenforceable because it included payment for services rendered to a California client in the state by an unlicensed out-of-state lawyer. The court opined that "When New York counsel decided to accept [the] representation, it should have researched California law, including the law governing the practice of law in this state." The Court of Appeal let stand, however, the trial court's decision to allow Birbrower to pursue its fifth cause of action in quantum meruit.[5] We agree with the Court of Appeal to the extent it barred Birbrower from recovering fees generated under the fee agreement for the unauthorized legal services it performed in California. We disagree with the same court to the extent it implicitly barred Birbrower

---

[5]We observe that ESQ did not seek (and thus the court did not grant) summary adjudication on the Birbrower firm's quantum meruit claim for the reasonable value of services rendered. Birbrower thus still has a cause of action pending in quantum meruit.

from recovering fees generated under the fee agreement for the limited legal services the firm performed in New York.

It is a general rule that an attorney is barred from recovering compensation for services rendered in another state where the attorney was not admitted to the bar. (Annot., Right of Attorney Admitted in One State to Recover Compensation for Services Rendered in Another State Where He Was Not Admitted to the Bar (1967) 11 A.L.R.3d 907; *Hardy, supra,* 99 Cal.App.2d at p. 576.) The general rule, however, has some recognized exceptions.

Initially, Birbrower seeks enforcement of the entire fee agreement, relying first on the federal court exception discussed *ante,* at page 130. (*Cowen, supra,* 230 Cal.App.2d at p. 872; *In re McCue, supra,* 211 Cal. at p. 66; see Annot., *supra,* 11 A.L.R.3d at pp. 912-913 [citing *Cowen* as an exception to general rule of nonrecovery].) This exception does not apply in this case; none of Birbrower's activities related to federal court practice.

A second exception on which Birbrower relies to enforce its entire fee agreement relates to "Services not involving courtroom appearance." (Annot., *supra,* 11 A.L.R.3d at p. 911 [citing *Wescott* v. *Baker* (1912) 83 N.J.L. 460 [85 A. 315]].) California has implicitly rejected this broad exception through its comprehensive definition of what it means to "practice law." Thus, the exception Birbrower seeks for all services performed outside the courtroom in our state is too broad under section 6125.

Some jurisdictions have adopted a third exception to the general rule of nonrecovery for in-state services, if an out-of-state attorney "makes a full disclosure to his client of his lack of local license and does not conceal or misrepresent the true facts." (Annot., *supra,* 11 A.L.R.3d at p. 910.) For example, in *Freeling* v. *Tucker* (1930) 49 Idaho 475 [289 P. 85], the court allowed an Oklahoma attorney to recover for services rendered in an Idaho probate court. Even though an Idaho statute prohibited the unlicensed practice of law, the court excused the Oklahoma attorney's unlicensed representation because he had not falsely represented himself nor deceptively held himself out to the client as qualified to practice in the jurisdiction. (*Id.* at p. 86.) In this case, Birbrower alleges that ESQ at all times knew that the firm was not licensed to practice law in California. Even assuming that is true, however, we reject the full disclosure exception for the same reasons we reject the argument that section 6125 is not meant to apply to nonattorneys. Recognizing these exceptions would contravene not only the plain language of section 6125 but the underlying policy of assuring the competence of those practicing law in California.

Therefore, as the Court of Appeal held, none of the exceptions to the general rule prohibiting recovery of fees generated by the unauthorized practice of law apply to Birbrower's activities in California. Because Birbrower practiced substantial law in this state in violation of section 6125, it cannot receive compensation under the fee agreement for any of the services it performed in California. Enforcing the fee agreement in its entirety would include payment for the unauthorized practice of law in California and would allow Birbrower to enforce an illegal contract. (*See Hardy, supra,* 99 Cal.App.2d at p. 576.)

Birbrower asserts that even if we agree with the Court of Appeal and find that none of the above exceptions allowing fees for unauthorized California services apply to the firm, it should be permitted to recover fees for those limited services it performed exclusively *in New York* under the agreement. In short, Birbrower seeks to recover under its contract for those services it performed for ESQ in New York that did not involve the practice of law in California, including fee contract negotiations and some corporate case research. Birbrower thus alternatively seeks reversal of the Court of Appeal's judgment to the extent it implicitly precluded the firm from seeking fees generated in New York under the fee agreement.

We agree with Birbrower that it may be able to recover fees under the fee agreement for the limited legal services it performed for ESQ in New York to the extent they did not constitute practicing law in California, even though those services were performed for a California client. Because section 6125 applies to the practice of law in California, it does not, in general, regulate law practice in other states. (See *ante,* at pp. 128-131.) Thus, although the general rule against compensation to out-of-state attorneys precludes Birbrower's recovery under the fee agreement for its actions in California, the severability doctrine may allow it to receive its New York fees generated under the fee agreement, if we conclude the illegal portions of the agreement pertaining to the practice of law in California may be severed from those parts regarding services Birbrower performed in New York. (See Annot., *supra,* 11 A.L.R.3d at pp. 908-909, and cases cited [bar on recovery by out-of-state attorney extends only to compensation for *local* services]; see also *Ranta, supra,* 391 N.W.2d at p. 166 [remanding case to determine which fees related to practice locally and which related to attorney's work in state where he was licensed].)

The law of contract severability is stated in Civil Code section 1599, which defines partially void contracts: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." In

*Calvert* v. *Stoner* (1948) 33 Cal.2d 97 [199 P.2d 297] (*Calvert*), we considered whether a contingent fee contract containing a provision restricting a party's right to compromise a suit without her attorney's consent was void entirely or severable in part. (*Id.* at p. 103.) We observed that "It is unnecessary . . . to determine whether the particular provision is invalid as against public policy. It is sufficient to observe, assuming such invalidity, that *in this state . . . the compensation features of the contract are not thereby deemed affected if in other respects the contract is lawful.*" (*Id.* at p. 104.) *Calvert* concluded that the invalid provision preventing the client from compromising the suit could be severed from the valid provision for attorney fees. (*Ibid.*)

The fee agreement between Birbrower and ESQ became illegal when Birbrower performed legal services in violation of section 6125. ■ It is true that courts will not ordinarily aid in enforcing an agreement that is either illegal or against public policy. (*Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 291 [211 Cal.Rptr. 703, 696 P.2d 95]; *Homami* v. *Iranzadi* (1989) 211 Cal.App.3d 1104, 1109-1110 [260 Cal.Rptr. 6].) Illegal contracts, however, will be enforced under certain circumstances, such as when only a part of the consideration given for the contract involves illegality. In other words, notwithstanding an illegal consideration, courts may sever the illegal portion of the contract from the rest of the agreement. (*Keene* v. *Harling* (1964) 61 Cal.2d 318, 320 [38 Cal.Rptr. 513, 392 P.2d 273] (*Keene*).) " ' "When the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction, for the . . . law . . . [divides] according to common reason; and having made that void that is against law, lets the rest stand. . . ." ' " (*Id.* at pp. 320-321, quoting *Jackson* v. *Shawl* (1865) 29 Cal. 267, 272.) If the court is unable to distinguish between the lawful and unlawful parts of the agreement, "the illegality taints the entire contract, and the entire transaction is illegal and unenforceable." (*Keene, supra,* 61 Cal.2d at p. 321.)

In *Keene,* the defendant agreed to pay the plaintiffs $50,000 in exchange for their business involving coin-operated machines. The defendant defaulted on his payments, and the plaintiffs sued. The defendant argued that the sales agreement was void because part of the sale involved machines that were illegal under a California penal statute. The court affirmed the lower court's determination that the price of the illegal machines could be deducted from the amount due on the original contract. "Since the consideration on the buyer's side was money, the court properly construed the contract by equating the established market price of the illegal machines to a portion of the money consideration." (*Keene, supra,* 61 Cal.2d at p. 323.) Thus, even though the entire contract was for a fixed sum, the court was able

to value the illegal portion of the contract and separate it from the rest of the amount due under the agreement.

 In this case, the parties entered into a contingency fee agreement followed by a fixed fee agreement.[6] ESQ was to pay money to Birbrower in exchange for Birbrower's legal services. The object of their agreement may not have been entirely illegal, assuming ESQ was to pay Birbrower compensation based in part on work Birbrower performed in New York that did not amount to the practice of law in California. The illegality arises, instead, out of the amount to be paid to Birbrower, which, if paid fully, would include payment for services rendered in California in violation of section 6125.

Therefore, we conclude the Court of Appeal erred in determining that the fee agreement between the parties was entirely unenforceable because Birbrower violated section 6125's prohibition against the unauthorized practice of law in California. Birbrower's statutory violation may require exclusion of the portion of the fee attributable to the substantial illegal services, but that violation does not necessarily entirely preclude its recovery under the fee agreement for the limited services it performed outside California. (*Calvert, supra,* 33 Cal.2d at pp. 104-105.)

Thus, the portion of the fee agreement between Birbrower and ESQ that includes payment for services rendered in New York may be enforceable to the extent that the illegal compensation can be severed from the rest of the agreement. On remand, therefore, the trial court must first resolve the dispute surrounding the parties' fee agreement and determine whether their agreement conforms to California law. If the parties and the court resolve the fee dispute and determine that one fee agreement is operable and does not violate any state drafting rules, the court may sever the illegal portion of the consideration (the value of the California services) from the rest of the fee agreement. Whether the trial court finds the contingent fee agreement or the fixed fee agreement to be valid, it will determine whether some amount is due under the valid agreement. The trial court must then determine, on

---

[6] The parties apparently do not dispute that they modified the original contingency fee arrangement to call for a fixed fee payment of over $1 million. They dispute, however, whether the original contingency fee arrangement became operative once again when ESQ failed to make a payment to Birbrower under the fixed fee arrangement. Because the trial court and the Court of Appeal believed the fee agreements to be unenforceable in their entirety, neither court addressed issues relating to the fee agreements themselves or the parties' disputes surrounding those agreements. We agree with the Court of Appeal that issues surrounding the two fee agreements and the applicability of either section 6147 (regulating contents of contingency fee agreements) or the State Bar Rules of Professional Conduct, rules 3-300 and 4-200 (governing fees for legal services), are best resolved by the trial court on remand.

evidence the parties present, how much of this sum is attributable to services Birbrower rendered in New York. The parties may then pursue their remaining claims.

## III. DISPOSITION

We conclude that Birbrower violated section 6125 by practicing law in California. To the extent the fee agreement allows payment for those illegal local services, it is void, and Birbrower is not entitled to recover fees under the agreement for those services. The fee agreement is enforceable, however, to the extent it is possible to sever the portions of the consideration attributable to Birbrower's services illegally rendered in California from those attributable to Birbrower's New York services. Accordingly, we affirm the Court of Appeal judgment to the extent it concluded that Birbrower's representation of ESQ in California violated section 6125, and that Birbrower is not entitled to recover fees under the fee agreement for its local services. We reverse the judgment to the extent the court did not allow Birbrower to argue in favor of a severance of the illegal portion of the consideration (for the California fees) from the rest of the fee agreement, and remand for further proceedings consistent with this decision.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**KENNARD, J.,** Dissenting.—In California, it is a misdemeanor to practice law when one is not a member of the State Bar. (Bus. & Prof. Code, §§ 6125, 6126, subd. (a).) In this case, New York lawyers who were not members of the California Bar traveled to this state on several occasions, attempting to resolve a contract dispute between their clients and another corporation through negotiation and private arbitration. Their clients included a New York corporation and a sister corporation incorporated in California; the lawyers had in previous years represented the principal owners of these corporations. The majority holds that the New York lawyers' activities in California constituted the unauthorized practice of law. I disagree.

The majority focuses its attention on the question of whether the New York lawyers had engaged in the practice of law *in California*, giving scant consideration to a decisive preliminary inquiry: whether, through their activities here, the New York lawyers had engaged in the practice of law *at all*. In my view, the record does not show that they did. In reaching a contrary conclusion, the majority relies on an overbroad definition of the term "practice of law." I would adhere to this court's decision in *Baron* v. *City of*

*Los Angeles* (1970) 2 Cal.3d 535 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036], more narrowly defining the practice of law as the representation of another in a judicial proceeding or an activity requiring the application of that degree of legal knowledge and technique possessed only by a trained legal mind. Under this definition, this case presents a triable issue of material fact as to whether the New York lawyers' California activities constituted the practice of law.

I

Defendant Birbrower, Montalbano, Condon & Frank, P.C. (hereafter Birbrower) is a New York law firm. Its lawyers are not licensed to practice law in California.

Kamal Sandhu was the sole shareholder of ESQ Business Services Inc., a New York corporation (hereafter ESQ-NY), of which his brother Iqbal Sandhu was the vice-president. Beginning in 1986, Birbrower lawyers represented the Sandhu family in various business matters. In 1990, Kamal Sandhu asked Birbrower lawyer Kevin Hobbs to review a proposed software development and marketing agreement between ESQ-NY and Tandem Computers Incorporated (hereafter Tandem). The agreement granted Tandem worldwide distribution rights to computer software created by ESQ-NY. The agreement also provided that it would be governed by California law and that, according to Birbrower's undisputed assertion, disputes were to be resolved by arbitration under the rules of the American Arbitration Association. ESQ-NY and Tandem signed the agreement.

Thereafter, a second corporation, also named ESQ Business Services, Inc. (hereafter ESQ-CAL), was incorporated in California, with Iqbal Sandhu as a principal shareholder. In 1991, ESQ-CAL consulted Birbrower lawyers concerning Tandem's performance under the agreement. In 1992, ESQ-NY and ESQ-CAL jointly hired Birbrower to resolve the dispute with Tandem, including the investigation and prosecution of claims against Tandem if necessary. ESQ-NY and ESQ-CAL entered into a contingency fee agreement with Birbrower; this agreement was executed in New York but was later modified to a fixed fee agreement in California.

The efforts of the Birbrower lawyers to resolve the dispute with Tandem included several brief trips to California. On these trips, Birbrower lawyers met with officers of both ESQ-NY and ESQ-CAL and with representatives of Tandem; they also interviewed arbitrators and participated in negotiating the settlement of the dispute with Tandem. (Maj. opn., *ante*, at p. 125.) On February 12, 1993, Birbrower initiated an arbitration proceeding against

Tandem, on behalf of both ESQ-NY and ESQ-CAL, by filing a claim with the American Arbitration Association in San Francisco, California. Before an arbitration hearing was held, the dispute with Tandem was settled.

In January 1994, ESQ-CAL and Iqbal Sandhu, the principal shareholder, sued Birbrower for malpractice. Birbrower cross-complained to recover its fees under the fee agreement. Plaintiffs ESQ-CAL and Iqbal Sandhu thereafter amended their complaint to add ESQ-NY as a plaintiff. Plaintiffs moved for summary adjudication, asserting the fee agreement was unenforceable because the Birbrower lawyers had engaged in the unauthorized practice of law in California. The trial court agreed, and granted plaintiffs' motion. The Court of Appeal upheld the trial court's ruling, as does a majority of this court today.

## II

Business and Professions Code section 6125 states: "No person shall practice law in California unless the person is an active member of the State Bar." The Legislature, however, has not defined what constitutes the practice of law.

Pursuant to its inherent authority to define and regulate the practice of law (see, e.g., *Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 728 [147 Cal.Rptr. 631, 581 P.2d 636]; *In re Lavine* (1935) 2 Cal.2d 324, 328; *People* v. *Turner* (1850) 1 Cal. 143, 150), this court in 1922 defined the practice of law as follows: " '[A]s the term is generally understood, the practice of the law is the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which the legal rights are secured although such matter may or may not be depending in a court.' " (*People* v. *Merchants Protective Corp.* (1922) 189 Cal. 531, 535 [209 P. 363] (*Merchants*).) The *Merchants* court adopted this definition verbatim from a decision by the Indiana Court of Appeals, *Eley* v. *Miller* (1893) 7 Ind.App. 529 [34 N.E. 836, 837-838]. (*Merchants, supra,* at p. 535.)

In 1970, in *Baron* v. *City of Los Angeles, supra,* 2 Cal.3d 535, 542 (*Baron*), this court reiterated the *Merchants* court's definition of the term "practice of law." We were quick to point out in *Baron*, however, that "ascertaining whether a particular activity falls within this general definition may be a formidable endeavor." (*Id.* at p. 543.) *Baron* emphasized "that it is not the whole spectrum of professional services of lawyers with which the State Bar

Act is most concerned, but rather it is the smaller area of activities defined as the 'practice of law.' " (*Ibid.*) It then observed: "In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law 'if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a *trained legal mind.*' [Citations.]" (*Ibid.*, italics added.) *Baron* added that "if the application of legal knowledge and technique is *required*, the activity constitutes the practice of law . . . ." (*Ibid.*, italics added.) This definition is quite similar to that proposed by Cornell Law School Professor Charles Wolfram, the chief reporter for the American Law Institute's Restatement of the Law Governing Lawyers: "The correct form of the test [for the practice of law] should inquire whether the matter handled was of such complexity that only a person trained as a lawyer should be permitted to deal with it." (Wolfram, Modern Legal Ethics (1986) p. 836.)

The majority asserts that the definition of practice of law I have stated above misreads this court's opinion in *Baron*. (Maj. opn., *ante*, at p. 129.) But what the majority characterizes as "the dissent's fanciful interpretation of the [*Baron* court's] thoughtful guidelines" (*ibid.*) consists of language I have quoted directly from *Baron*.

The majority also charges that the narrowing construction of the term "practice of law" that this court adopted in *Baron* "effectively limit[s] section 6125's application to those cases in which nonlicensed out-of-state lawyers appeared in a California courtroom without permission." (Maj. opn., *ante*, at p. 129.) Fiddlesticks. Because the *Baron* definition encompasses all activities that " 'reasonably demand application of a trained legal mind' " (*Baron, supra,* 2 Cal.3d at p. 543), the majority's assertion would be true only if there were no activities, apart from court appearances, requiring application of a trained legal mind. Many attorneys would no doubt be surprised to learn that, for example, drafting testamentary documents for large estates, preparing merger agreements for multinational corporations, or researching complex legal issues are not activities that require a trained legal mind.

According to the majority, use of the *Baron* definition I have quoted would undermine protection of the public from incompetent legal practitioners. (Maj. opn., *ante,* at p. 129.) The *Baron* definition provides ample protection from incompetent legal practitioners without infringing upon the public's interest in obtaining advice and representation from other professionals, such as accountants and real estate brokers, whose skills in specialized areas may overlap with those of lawyers. This allows the public the freedom to choose professionals who may be able to provide the public with

needed services at a more affordable cost. (See Wolfram, Modern Legal Ethics, *supra,* at p. 831; Rhode, *Policing the Professional Monopoly: A Constitutional and Empirical Analysis of Unauthorized Practice Prohibitions* (1981) 34 Stan.L.Rev. 1, 97-98; Weckstein, *Limitations on the Right to Counsel: The Unauthorized Practice of Law,* 1978 Utah L.Rev. 649, 650.) As this court has recognized, there are proceedings in which nonattorneys "are competent" to represent others without undermining the protection of the public interest. (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 913-914 [160 Cal.Rptr. 124, 603 P.2d 41].)

The majority, too, purports to apply the definition of the practice of law as articulated in *Baron, supra,* 2 Cal.3d 535. The majority, however, focuses only on *Baron*'s quotation of the general definition of the practice of law set forth in *Merchants, supra,* 189 Cal. 531, 535. The majority ignores both the ambiguity in the *Merchants* definition and the manner in which *Baron* resolved that ambiguity. The majority apparently views the practice of law as encompassing *any* "legal advice and legal instrument and contract preparation, whether or not these subjects were rendered in the course of litigation." (Maj. opn., *ante,* at p. 128.)

The majority's overbroad definition would affect a host of common commercial activities. On point here are comments that Professor Deborah Rhode made in a 1981 article published in the Stanford Law Review: "For many individuals, most obviously accountants, bankers, real estate brokers, and insurance agents, it would be impossible to give intelligent counsel without reference to legal concerns that such statutes reserve as the exclusive province of attorneys. As one [American Bar Association] official active in unauthorized practice areas recently acknowledged, there is growing recognition that ' "all kinds of other professional people are practicing law almost out of necessity." ' Moreover, since most legislation does not exempt gratuitous activity, much advice commonly imparted by friends, employers, political organizers, and newspaper commentators constitutes unauthorized practice. For example, although the organized bar has not yet evinced any inclination to drag [nationally syndicated advice columnist] Ann Landers through the courts, she is plainly fair game under extant statutes [proscribing the unauthorized practice of law]." (Rhode, *Policing the Professional Monopoly: A Constitutional and Empirical Analysis of Unauthorized Practice Prohibitions, supra,* 34 Stan.L.Rev. at p. 47, fns. omitted.)

Unlike the majority, I would for the reasons given above adhere to the more narrowly drawn definition of the practice of law that this court articulated in *Baron, supra,* 2 Cal.3d 535, 543: the representation of another in a judicial proceeding or an activity requiring the application of that degree

of legal knowledge and technique possessed only by a trained legal mind. Applying that definition here, I conclude that the trial court should not have granted summary adjudication for plaintiffs based on the Birbrower lawyers' California activities. That some or all of those activities related to arbitration does not necessarily establish that they constituted the practice of law, as I shall explain.

## III

As I mentioned earlier, Birbrower's clients had a software development and marketing agreement with Tandem. The agreement provided that its validity, interpretation, and enforcement were to be governed by California law. It also contained an arbitration provision. After a dispute arose pertaining to Tandem's performance under the agreement, Birbrower initiated an arbitration on behalf of its clients by filing a claim with the American Arbitration Association in San Francisco, and held meetings in California to prepare for an arbitration hearing. Because the dispute with Tandem was settled, the arbitration hearing was never held.

As I explained in part II, *ante*, this court in *Baron, supra,* 2 Cal.3d 535, 543, defined the term "practice of law" in narrower terms than the court had done earlier in *Merchants, supra,* 189 Cal. 531, 535, which simply adopted verbatim the general definition set forth in an 1893 decision of the Indiana Court of Appeals. Under the narrower definition articulated in *Baron*, the practice of law is the representation of another in a judicial proceeding or an activity requiring the application of that degree of legal knowledge and technique possessed only by a trained legal mind.

Representing another in an arbitration proceeding does not invariably present difficult or doubtful legal questions that require a trained legal mind for their resolution. Under California law, arbitrators are "not ordinarily constrained to decide according to the rule of law . . . ." (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Thus, arbitrators, " 'unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' [Citations.]" (*Id.* at pp. 10-11.) They " 'are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good].' [Citation.]" (*Id.* at p. 11, original brackets.) For this reason, "the existence of an *error of law* apparent on the face of the [arbitration] award *that causes substantial injustice* does not provide grounds for judicial review." (*Id.* at p. 33, italics added; contra, *id.* at pp. 33-40 (conc. and dis. opn. of Kennard, J.).)

Moreover, an arbitrator in California can award any remedy "arguably based" on "the contract's general subject matter, framework or intent." (*Advanced Micro Devices, Inc.* v. *Intel Corp.* (1994) 9 Cal.4th 362, 381 [36 Cal.Rptr.2d 581, 885. P.2d 994].) This means that "an arbitrator in a commercial contract dispute may award an essentially unlimited range of remedies, whether or not a court could award them if it decided the same dispute, so long as it can be said that the relief draws its 'essence' from the contract and not some other source." (*Id.* at p. 391 (dis. opn. of Kennard, J.).)

To summarize, under this court's decisions, arbitration proceedings are not governed or constrained by the rule of law; therefore, representation of another in an arbitration proceeding, including the activities necessary to prepare for the arbitration hearing, does not necessarily require a trained legal mind.

Commonly used arbitration rules further demonstrate that legal training is not essential to represent another in an arbitration proceeding. Here, for example, Birbrower's clients agreed to resolve any dispute arising under their contract with Tandem using the American Arbitration Association's rules, which allow any party to be "represented by counsel *or other authorized representative.*" (Am. Arbitration Assn., Com. Arbitration Rules (July 1, 1996) § 22, italics added.) Rules of other arbitration organizations also allow for representation by nonattorneys. For instance, the Rules of Procedure of the Inter-American Commercial Arbitration Commission, article IV provides: "The parties may be represented or assisted by persons of their choice." By federal law, this rule applies in all arbitrations between a United States citizen and a citizen of another signatory to the Inter-American Convention on International Commercial Arbitration, unless the arbitrating parties have expressly provided otherwise. (9 U.S.C. § 303(b); Inter-Am. Convention on International Com. Arbitration, art. 3.)

The American Arbitration Association and other major arbitration associations thus recognize that nonattorneys are often better suited than attorneys to represent parties in arbitration. The history of arbitration also reflects this reality, for in its beginnings arbitration was a dispute-resolution mechanism principally used in a few specific trades (such as construction, textiles, ship chartering, and international sales of goods) to resolve disputes among businesses that turned on factual issues uniquely within the expertise of members of the trade. In fact, "rules. of a few trade associations forbid representation by counsel in arbitration proceedings, because of their belief that it would complicate what might otherwise be simple proceedings." (Grenig, Alternative Dispute Resolution (1997) § 5.2, p. 81.) The majority gives no adequate justification for its decision to deprive parties of their

freedom of contract and to make it a crime for anyone but California lawyers to represent others in arbitrations in California.

In addressing an issue similar to that presented here, a federal court held that a firm of New Jersey lawyers not licensed to practice law in New York was entitled to recover payment for legal services rendered in a New York arbitration proceeding. (*Williamson* v. *John D. Quinn Const. Corp.* (S.D.N.Y. 1982) 537 F.Supp. 613 (*Williamson*).) In allowing recovery of fees, the court cited a report by the Association of the Bar of The City of New York: "The report states, 'it should be noted that no support has to date been found in judicial decision, statute or ethical code for the proposition that representation of a party in any kind of arbitration amounts to the practice of law.' The report concludes '[t]he Committee is of the opinion that representation of a party in an arbitration proceeding by a nonlawyer or a lawyer from another jurisdiction is not the unauthorized practice of law.' " (*Id.* at p. 616, quoting Com. Rep., Labor Arbitration and the Unauthorized Practice of Law (May/ June 1975) 30 Record of the Association of the Bar of The City of New York, No. 5/6, at pp. 422, 428.)

The majority's attempt to distinguish *Williamson, supra,* 537 F.Supp. 613, from this case is unpersuasive. The majority points out that in *Williamson*, the lawyers of the New Jersey firm actually rendered services at the New York arbitration hearing, whereas here the New York lawyers never actually appeared at an arbitration hearing in California. (Maj. opn., *ante*, at pp. 133, 134, fn. 4.) The majority distinguishes *Williamson* on the ground that in this case no arbitration hearing occurred. Does the majority mean that an actual appearance at an arbitration hearing is not the practice of law, but that preparation for arbitration proceedings is?

In this case, plaintiffs have not identified any specific California activities by the New York lawyers of the Birbrower firm that meet the narrow definition of the term "practice of law" as articulated by this court in *Baron, supra,* 2 Cal.3d 535, 543. Accordingly, I would reverse the judgment of the Court of Appeal and direct it to remand the matter to the trial court with directions to vacate its order granting plaintiff's motion for summary adjudication and to enter a new order denying that motion.

On February 25, 1998, the opinion was modified to read as printed above.