Filed 12/14/21  Kling v. Horn CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ANTHONY N. KLING, | B305967 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC682318) |
| STEVEN J. HORN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Law Office of David Knieriem and David Knieriem; Kling Law Firm and Anthony N. Kling for Plaintiff and Appellant.

Valerie F. Horn & Associates and Valerie F. Horn for Defendant and Respondent.

# INTRODUCTION

Steven J. Horn, an attorney, represented Anthony L. Kling, also an attorney, in a lawsuit. A fee dispute arose: Horn wanted Kling to pay fees he owed, Kling wanted to recover fees he had paid. Horn filed a demand for arbitration with the American Arbitration Association (AAA) pursuant to the arbitration provision in his retainer agreement. Kling, in turn, filed a demand for arbitration with the Los Angeles County Bar Association (LACBA) under the Mandatory Fee Arbitration Act (MFAA), Business and Professions Code section 6200 et seq.[1]

The AAA stayed its arbitration while Kling and Horn participated in the LACBA arbitration. Kling partially prevailed in the latter, obtaining a nonbinding award that required Horn to repay Kling some of the fees Kling had paid him. But Kling, apparently believing he could recover more from Horn, rejected the award and filed an action in the Los Angeles County Superior Court seeking a trial after the LACBA arbitration.

Meanwhile, back in the AAA arbitration, Horn sought and obtained an order lifting the stay. Despite receiving notice the AAA arbitration was no longer stayed, Kling declined to participate. The AAA arbitrator awarded Horn $192,000.

Horn filed a petition to confirm the AAA arbitration award, and Kling filed a petition to vacate it. The trial court granted Horn's petition, denied Kling's, and entered judgment. Kling appeals, and we affirm.

---

[1]    Undesignated references are to the Business and Professions Code.

`

**FACTUAL AND PROCEDURAL BACKGROUND**

A.     *The Klings Retain Horn*

In 2011 Kling and his mother, Mary, retained Horn to represent them in a lawsuit they had filed, *Kling et al. v. Hassid et al.* (Super. Ct. L.A. County, 2014, No. SC098810).[2]  Horn's retainer agreement included a provision requiring the Klings to submit any dispute "arising from th[e] Agreement," including those concerning "fees, costs or the quality of the work," to "binding arbitration in accordance with the Commercial Arbitration Rules of the [AAA]."

B.     *Horn and the Klings File Arbitration Demands*

In November 2013 Horn withdrew as counsel from the *Hassid* action after a dispute arose over Horn's handling of the case.[3]  In September 2014 Horn filed with the AAA a demand for arbitration against the Klings, seeking $84,000 in unpaid fees, costs, and interest.  Horn later added to the proceeding 3123 SMB LLC, Lincoln One Corporation, and Cliffwood, LLC, entities Kling identified as "successors in interest" to the Klings.

In May 2015 the Klings filed a petition for arbitration with the LACBA under the MFAA.  The Klings alleged that Horn committed malpractice when he represented them in the *Hassid*

---

[2]     Horn represented Kling in his individual capacity and as the trustee of his named trust, but represented Mary only as the trustee of her named trust.  All references to the Klings are to Anthony and Mary in those capacities.

[3]     A year later the trial court dismissed the *Hassid* action for failure to timely bring it to trial.

3

`

action and that they were entitled to the return of $648,000 in attorneys' fees the Klings claimed they had paid him. The AAA notified Horn and the Klings it was holding the AAA arbitration "in abeyance pending the outcome" of the LACBA arbitration.

The Klings and Horn participated in the LACBA arbitration. In October 2017 the arbitration panel issued a statement of decision and award. The panel concluded Horn's alleged misconduct "was not sufficiently serious under the circumstances to warrant that [Horn] should not be entitled to payment for [his] legal services . . . ." The panel ruled, however, that Horn charged the Klings fees that did "not represent time reasonably necessary . . . to attain [the Klings'] goals" in the litigation and that Horn had padded his time entries. The panel ruled that the reasonable value of Horn's services and costs was $380,245 and that the Klings had paid Horn $603,231. The panel issued an award in favor of the Klings in the amount of $217,986, representing the difference, minus $5,000 in arbitration costs.

     C.     *The Klings Reject the LACBA Award, and Horn Proceeds with the AAA Arbitration*

The Klings were not satisfied with $217,986. In November 2017 the Klings, 3123 SMB, and Kling Corporation—another entity that participated in the *Hassid* action—filed a complaint in the Los Angeles County Superior Court requesting a trial after the LACBA arbitration.[4] In addition to seeking a return of the attorneys' fees they had paid Horn, the Klings and the related entities asserted several causes of action alleging Horn

---

[4]    3123 SMB and Kling Corporation were petitioners, along with the Klings, in the LACBA arbitration.

4

`

committed legal malpractice in the *Hassid* action.  The trial court eventually sustained Horn's demurrer to those causes of action, ruling they were time-barred (a ruling Kling does not challenge in this appeal).[5]  The Klings' only cause of action remaining after the court's ruling on Horn's demurrer was the Klings' request for a trial after the LACBA arbitration.

Meanwhile, Horn filed in the AAA arbitration and sent to the Klings' counsel of record a document titled "Notice of Revival of Demand and/or Demand to Compel and/or Proceed with Contractual Binding Arbitration and To Lift the Stay."  Horn stated that the LACBA arbitration panel had issued a nonbinding award and that he was filing the notice in the AAA arbitration "in order to proceed with contractual binding arbitration which was stayed pending said award . . . ."  Kling, purportedly acting as counsel for Mary Kling (but not for himself), filed a motion to dismiss the AAA arbitration.  Kling subsequently sent the arbitrator and Horn a letter stating the

_____

[5]      This action was neither the first time nor the last time Kling sued Horn for legal malpractice.  Shortly after Horn filed his demand for arbitration with AAA, Kling, through 3123 SMB, filed an action for legal malpractice against Horn in the United States District Court for the Central District of California.  The district court ultimately dismissed that action on the ground that 3123 SMB had obtained diversity through jurisdictional manipulation.  (See *3123 SMB LLC v. Horn* (C.D.Cal. May 7, 2018, No. CV 14-8115) 2018 WL 5801875, p. 2.)  3123 SMB filed a similar malpractice action in the Los Angeles County Superior Court.  The court in that case dismissed the action as time-barred, 3123 SMB appealed, and Division Three of this court affirmed.  (See *3123 SMB LLC v. Horn* (Nov. 22, 2019, B294372) [nonpub. opn.].)

5

`

Klings and their related entities were refusing to participate in the AAA arbitration because they did not believe the AAA had "jurisdiction" to hear the dispute.

    D.    *The AAA Arbitrator Issues an Award in Favor of Horn, Which the Trial Court Confirms*

The arbitrator in the AAA arbitration set the matter for a hearing. Horn participated; the Klings did not. In September 2018 the arbitrator issued an award in favor of Horn and against the Klings and the related entities in the amount of $193,921. The award included fees and costs Horn claimed the Klings owed him, the attorneys' fees and expert witness fees Horn incurred in the AAA arbitration, and the AAA arbitration costs and fees Horn paid.

Horn filed a new action in superior court to confirm the award. The Klings responded by filing their own new action to vacate the AAA award under Code of Civil Procedure section 1286.2. The superior court eventually consolidated all three related actions: Horn's petition to confirm the AAA arbitration award; the Klings' petition to vacate the AAA arbitration award; and the Klings' earlier action requesting a trial after the LACBA arbitration.

In September 2019 the Klings filed a document titled "request to set a jury trial," contending they were entitled to have a jury hear their petition to vacate the arbitration award because the petition to vacate was both a "fraud lawsuit" and a "contract dispute." The trial court denied the request, ruling that Code of Civil Procedure section 1286.2, which governs petitions to vacate an arbitration award, does not give the moving party a right to a jury trial.

6

`

The Klings raised numerous grounds for vacating the arbitration award. Those relevant to this appeal included that the AAA award attached to Horn's petition to confirm was "not a self-validating document"; that Horn did not comply with the MFAA because he did not file a new action requesting a trial after arbitration within 30 days of the LACBA award; that the AAA proceeding was "void as a matter of law" because Horn did not give the Klings notice of their right to arbitrate under the MFAA and never served the Klings with a demand for arbitration; and that Horn's retainer agreement contained an illegal block billing provision that rendered the entire agreement unenforceable.

The trial court granted Horn's petition to confirm the AAA arbitration award against the Klings (but not against the other entities) and denied Kling's petition to vacate the award. The court ruled that Horn's petition complied with Code of Civil Procedure section 1285.4, which lists the requirements for confirming an arbitration award; that Horn complied with the MFAA by filing a notice of revival and a demand for arbitration with the AAA; that the Klings waived any objections to service by making a general appearance in the AAA arbitration; and that the arbitrator was not required to determine the retainer agreement was illegal. The court entered judgment in favor of Horn and against the Klings. Kling timely appealed; Mary Kling did not.

`

**DISCUSSION**

A.      *Horn's Petition To Confirm the Award Complied with the California Arbitration Act*

Kling first contends Horn "never introduced any evidence to suggest the [AAA] award existed" because the copy of the award Horn attached to his petition was "hearsay." This argument is meritless.

The California Arbitration Act (CAA) prescribes the requirements of a petition to confirm an arbitration award. The petition must "(a) [s]et forth the substance of or have attached a copy of the agreement to arbitrate," "(b) [s]et forth names of the arbitrators," and "(c) [s]et forth or have attached a copy of the award and the written opinion of the arbitrators, if any." (Code Civ. Proc., § 1285.4.) "If a petition . . . is duly served and filed, the court shall confirm the award as made," unless the court corrects or vacates the award, or dismisses the petition, pursuant to one of the statutory grounds. (*Id.*, § 1286; see *id.*, §§ 1286.2, 1286.6, 1287.2.) "The purpose of [the predecessor to Code of Civil Procedure section 1285.4] is to be sure that the trial judge has access to the arbitration agreement, the names of the arbitrators and the award. . . . [S]ubstantial compliance . . . is all that is required." (*Puccinelli v. Nestor* (1956) 145 Cal.App.2d 48, 49-50; see *Horn v. Gurewitz* (1968) 261 Cal.App.2d 255, 261.)

There is no question Horn substantially complied with Code of Civil Procedure section 1285.4. He attached to his operative amended petition a copy of his retainer agreement, which contained the arbitration provision, and a copy of the arbitration award, which contained the name and signature of the arbitrator. Although it is not entirely clear, Kling appears to

8

`

be arguing that, to avoid a hearsay objection, someone from AAA had to authenticate the award by testifying the award Horn submitted with his petition was in fact the award issued by the AAA arbitrator.  Code of Civil Procedure section 1285.4, however, contains no such requirement; it only required Horn to submit "a copy of the award." (Code Civ. Proc., § 1285.4, subd. (c); see *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745 ["A petition to confirm need only set forth (1) the names of the arbitrators, (2) the arbitration agreement (by description or attached copy), and (3) the award and written opinion of the arbitrators (by description or attached copy)."]; *Accito v. Matmor Canning Co.* (1954) 128 Cal.App.2d 631, 633 ["'[s]tatutes relating to arbitration are ordinarily regarded as remedial in nature, and liberally construed' . . . in accordance with the object of such statutes to provide a means of obtaining speedy and final disposition of disputes by arbitrators"].)  Which Horn did.  After that, it was up to Kling to convince the court the arbitration award Horn submitted was not the actual arbitration award. (See *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 94 ["'the burden is on the party attacking the [arbitration] award to affirmatively establish the existence of error'"].)

B.      *Kling Was Not Entitled to a Jury Trial on His Petition To Vacate the Award*

Kling argues he was entitled to a jury trial on his petition because his asserted grounds to vacate the award included fraud and illegality.  Kling relies on the general propositions that parties to a common law action at law have a right to a jury trial and that actions to recover damages for fraud and breach of contract are actions at law.  "Whether a party was

9

`

constitutionally entitled to a jury trial is a question of law that we review de novo." (*Hollingsworth v. Heavy Transport, Inc.* (2021) 66 Cal.App.5th 1157, 1173.)

Kling fundamentally misunderstands the nature of contractual arbitration and petitions to confirm and vacate arbitration awards. The CAA does not guarantee (or even permit) a party to have a jury determine a petition to vacate an arbitration award. Any petition filed under the CAA, including a petition to vacate an award under Code of Civil Procedure section 1285, "shall be heard in a summary way in the manner and upon the notice provided by law for the making and hearing of motions . . . ." (Code Civ. Proc., § 1290.2; see *Department of Human Resources v. International Union of Operating Engineers* (2020) 58 Cal.App.5th 861, 882; *Hyundai Securities Co., Ltd. v. Lee* (2013) 215 Cal.App.4th 682, 691 [the Legislature "provided for the specific summary procedures for compelling, confirming, and vacating arbitration awards"].) "[T]he facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413-414; accord, *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1223.) These limited "procedures for judicial review of a private arbitration award" apply "even absent the specific agreement of the parties." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831.) The trial court did not err in denying Kling's request for a jury trial on his petition to vacate the AAA arbitration award.

`

## C. *The Trial Court Did Not Err in Denying Kling's Petition To Vacate the Award*

### 1. *Applicable Law and Standard of Review*

"'[A]rbitral finality is a core component of the parties' agreement to submit to arbitration.'" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; accord, *Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 957.) "Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey*, at p. 916; accord, *Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1086-1087.) "Judicial review of the arbitrator's award is limited to the grounds set forth in Code of Civil Procedure sections 1286.2 (to vacate) and 1286.6 (to correct)." (*Soni*, at p. 1087; see *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27-28 (*Moncharsh*) ["we adhere to the . . . line of cases that limit judicial review of private arbitration awards to those cases in which there exists a statutory ground to vacate or correct the award"].) Kling relies on Code of Civil Procedure section 1286.2, subdivision (a)(4), which authorizes the court to vacate an arbitration award if the "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

"To the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence. [Citation.] To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo. [Citation.] [¶] We apply a highly deferential standard of review to the award itself,

` 

insofar as our inquiry encompasses the arbitrator's resolution of questions of law or fact." (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11-12; see *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743, 750.)

    2.    *The Arbitrator Did Not Exceed His Powers on the Ground Horn Did Not Comply with the MFAA*

Section 6204, subdivision (a), provides that where, as here, the parties to an MFAA arbitration have not agreed in advance to be bound by the award, "either party shall be entitled to a trial after arbitration if sought within 30 days . . . ." Section 6204, subdivision (b), provides: "If there is an action pending, the trial after arbitration shall be initiated by filing a rejection of arbitration award and request for trial after arbitration in that action . . . ." And section 6204, subdivision (c), provides: "If no action is pending, the trial after arbitration shall be initiated by the commencement of an action in the court having jurisdiction over the amount of money in controversy . . . ."

Kling contends that the arbitrator exceeded his powers in issuing the award because the notice of revival and demand for arbitration Horn filed in the AAA arbitration did not comply with section 6204. This argument, too, is meritless.

First, Kling did comply with section 6204. A client may not avoid a prior agreement to arbitrate disputes with his or her attorney by requesting mandatory arbitration under the MFAA and then filing a request for a trial after the arbitration. "[O]nce the MFAA arbitration process is validly completed or terminated, . . . binding arbitration, pursuant to a preexisting agreement,

12

`

may go forward . . . ." (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 571; accord, *Rosenson v. Greenberg Glusker Fields Claman & Machtinger LLP* (2012) 203 Cal.App.4th 688, 693; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2020 supp.) ¶ 5:107.6a ["following nonbinding MFAA arbitration, the attorney can require that the dispute be submitted to private arbitration in accordance with the retention agreement (thus 'trumping' the client's MFAA right to elect a trial de novo in a court of law)"].) Where the parties have agreed to binding arbitration, "a demand for arbitration within 30 days of service of the MFAA award is a proceeding that prevents finality of the MFAA award" under section 6204. (*Rosenson*, at p. 692.) Here, within 30 days of the LACBA award, Horn filed in the AAA arbitration a notice of revival and demand for arbitration, unequivocally stating he intended to proceed with the arbitration. That was sufficient. (See *id.* at p. 694 ["law firm properly invoked the right to binding arbitration under the retainer agreement by filing a timely demand, which prevented the MFAA award from becoming final"]; see also § 6201, subd. (c) [where an "action or other proceeding" has been stayed pending resolution of an MFAA proceeding, "[t]he action or other proceeding may thereafter proceed subject to the provisions of Section 6204"].)[6]

---

[6] Kling contends the notice of revival and demand did not comply with the MFAA because Horn had not previously served Kling in the AAA proceeding. But Kling is conflating two separate issues. Section 6204, subdivisions (b) and (c), require only that the party rejecting the arbitration award and requesting a trial after arbitration file the rejection and request within 30 days, which Horn did. Whether Horn properly served

13

`

Second, even if Horn's filing in the AAA arbitration did not fully comply with section 6204, the MFAA does not provide Kling the relief he seeks. The MFAA specifies one (and only one) consequence for failing to comply with section 6204—the MFAA award becomes binding, and a court with jurisdiction may confirm it. (See § 6203, subd. (b) ["Even if the parties to the arbitration have not agreed in writing to be bound, the arbitration award shall become binding upon the passage of 30 days after service of notice of the award, unless a party has, within the 30 days, sought a trial after arbitration pursuant to Section 6204."].) But that is not what Kling was attempting to do here. Kling never argued the LACBA award should become binding, nor did he seek to confirm the LACBA award rather than the AAA award; to the contrary, Kling rejected the LACBA arbitration award and requested a trial after the arbitration. (Cf. *Giorgianni v. Crowley* (2011) 197 Cal.App.4th 1462, 1478 ["In the context of judicial arbitration [citation], a party electing to have a trial de novo by making a timely demand under the statute . . . wipes the judicial arbitration slate clean . . . 'putting the case at large as though no arbitration proceedings had occurred.'"].) Nothing in the MFAA authorizes a court to deny a request for a trial after arbitration or to preclude an arbitrator from hearing an arbitration after an untimely or defective request under section 6204—at least not where, as here, all parties to the proceeding agree the MFAA award is not binding.

---

Kling with the arbitration demand is a different issue, which we will discuss.

14

### 3.    *The AAA Arbitration Was Not Void*

Kling also contends the AAA arbitrator exceeded his powers because the AAA never had jurisdiction to hear the matter and the arbitration was "void ab initio."  Kling has two theories.  First, Kling contends the AAA arbitration was void because Horn did not give him notice of his right to fee arbitration, as required by the MFAA.  Kling is wrong on the law.  The MFAA does require that, prior to or at the time an attorney initiates a contractual arbitration proceeding against a client, the attorney "shall include a statement of the client's right to arbitration under" the MFAA and that "[f]ailure to give this notice shall be a ground for the dismissal of the . . . proceeding." (§ 6201, subd. (a).)  But even if Horn failed to comply, dismissal provided under section 6201, subdivision (a), is "discretionary, rather than mandatory." (*Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 366; see *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1088 [a court "*may, in its discretion,* dismiss the action for attorney fees where the attorney fails to give the client the requisite section 6201(a) notice"]; *Richards, Watson & Gershon v. King* (1995) 39 Cal.App.4th 1176, 1180 ["dismissal for failure to comply with the notice provision of section 6201, subdivision (a) is discretionary"].)  The arbitrator did not abuse his discretion (and therefore exceed his powers) by not dismissing the arbitration.

Second, Kling asserts "[t]here was nothing in 2017 for Horn to revive because no one has ever seen any initiating documents from AAA or Horn for any so-called arbitration."  If Kling is arguing he was never properly served in the AAA arbitration, his argument lacks merit.

15

`

"A demand for arbitration must be served on the other party," and the "failure to serve a demand for arbitration on a person precludes a judgment from being made against that person in a contractual arbitration proceeding." (*Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1842-1843.) The trial court, however, found Kling waived any defect in service by appearing in the AAA arbitration. Substantial evidence supported the court's finding that Kling participated to some extent in the AAA arbitration, even though he chose not to attend the hearing. For example, approximately one month after Horn filed his notice of revival and demand for arbitration, the Klings, through their attorney, filed a document titled "Case/Discovery Report," in which the Klings discussed their anticipated expert testimony, their estimate for the length of the arbitration hearing, and scheduling issues. Kling does not address this portion of the court's ruling, nor does he argue that or how the court erred in ruling he waived any defect in service. (See *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520 [because "an "'order of the lower court is *presumed correct*,"'" the appellant "has the burden of affirmatively showing error"].)

### 4. *Horn's Retainer Agreement Was Not Illegal*

#### a. *Applicable Law*

Kling also contends the trial court erred in not vacating the AAA arbitration award because Horn, in the arbitration, sought to enforce an "illegal" retainer agreement that permitted him to

16

`

block bill his time entries.[7]  An arbitrator exceeds his powers, "and an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal and against the public policy of the state.'" (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 73 (*Sheppard, Mullin*); see *Moncharsh, supra*, 3 Cal.4th at p. 32.)  Any provision for block billing in Horn's engagement agreement, however, hardly made the agreement illegal.

As the Supreme Court has explained, the availability of judicial review differs depending on whether the entire contract a party seeks to enforce through arbitration is illegal or whether only a portion of an otherwise enforceable contract is illegal.  "'If a contract includes an arbitration agreement, and grounds exist to revoke *the entire contract*, such grounds . . . also vitiate the arbitration agreement.  Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether.'" (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 76; see *Moncharsh, supra*, 3 Cal.4th at p. 29.)  If, on the other hand, "'the alleged illegality goes to only a portion of the contract (that does not include the arbitration agreement), the entire controversy, including the issue of illegality, [generally] remains arbitrable.'" (*Sheppard, Mullin*, at p. 76; see *Moncharsh*, at p. 30.)  Although "'there may be some limited and exceptional circumstances justifying judicial review of an

---

[7]     "Block billing occurs when 'a block of time [is assigned] to multiple tasks rather than itemizing the time spent on each task.'" (*Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 279.)

`

arbitrator's decision when a party claims illegality affects only a portion of the underlying contract,' . . . [i]n light of the legislative policy in favor of arbitral finality, . . . courts should be reluctant to invalidate an award on such a ground '[w]ithout an explicit *legislative* expression of public policy.'" (*Sheppard, Mullin*, at p. 77; see *Moncharsh*, at p. 32.)

        b.    *Analysis*

Kling's entire argument rests on his assertion that block billing violates section 6148, subdivision (b), which states that "[a]ll bills rendered by an attorney to a client shall clearly state the basis thereof" and must state "the amount, rate, basis for calculation, or other method of determination of the attorney's fees and costs." Kling's argument is, at best, dubious. While some commentators have criticized the practice of block billing,[8] Kling has not cited any authority suggesting block billing violates section 6148, is illegal, or is contrary to public policy. To the contrary, several courts, reviewing awards of attorneys' fees, have stated that block billing "is not objectionable 'per se,'" although it may justify discounting an attorney's fee request, particularly when the court must decide which of several billed fees are recoverable. (See, e.g., *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830 ["block billing is not

---

[8]    See, e.g., Tuft et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2020 supp.) ¶ 5:920 (Section 6148, subdivision (b) "does not expressly require disclosing the date upon which services were rendered or that services be specifically described. . . . [¶] However, block billing may not adequately explain the services rendered and should be used with caution.").

objectionable 'per se,'" but "does increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request"]; *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325 ["Block billing, while not objectionable per se in our view, exacerbated the vagueness of counsel's fee request."].)

The provision of the retainer agreement Kling characterizes as illegal stated: "Attorney [Horn] may group or block bill for services rendered on a given day rather than itemizing each individual charge for services." The agreement, however, also stated Horn's hourly rate and required him to charge his services to the nearest tenth of an hour. Taken together, these provisions would not necessarily preclude Kling from understanding the amount, rate, basis, and calculation of Horn's fees.

But even if the block billing provision in the retainer agreement violated section 6148, the trial court still did not err in denying Horn's petition to vacate the award. Contrary to Kling's assertion, the inclusion in an attorney's engagement agreement of one illegal provision does not necessarily render the entire agreement illegal. (See *Sheppard, Mullin*, *supra*, 6 Cal.5th at p. 79 ["the case law does not establish . . . that an attorney-services contract may be declared illegal in its entirety simply because it contains a provision that conflicts with an attorney's obligations under [an ethical rule]"].) "It is only when 'the illegality taints the entire contract' that courts may declare 'the entire transaction is illegal and unenforceable.'" (*Id.* at pp. 79-80; see *Koenig v. Warner Unified School Dist.* (2019) 41 Cal.App.5th 43, 56 [""If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced, [but if]

19

`

the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.""'].)

For example, in *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119 (*Birbrower*) the Supreme Court held a New York law firm's fee agreement was not unenforceable in its entirety, even though it permitted the firm to recover fees for legal services performed in California, in violation of the prohibition on the unauthorized practice of law. (*Id.* at pp. 12-13.) The Supreme Court explained that "the portion of the fee agreement . . . that includes payment for services rendered in New York may be enforceable to the extent that the illegal compensation can be severed from the rest of the agreement." (*Id.* at p. 13.)

In *Calvert v. Stoner* (1948) 33 Cal.2d 97 (*Calvert*) the Supreme Court held a provision in a contingency fee agreement that prohibited the client from entering into a litigation settlement without her attorney's approval, even if illegal, did not render the entire agreement illegal, where the attorney never sought to enforce the challenged prohibition. (See *id.* at pp. 99, 103-105.) And in *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489 (*Shopoff*) the court held a provision in a contingency fee agreement granting the attorney a lien on the clients' recovery did not render the arrangement illegal, even if the manner in which the attorney acquired the lien violated the Rules of Professional Conduct. (See *id.* at pp. 1498, 1524-1525.) The court in *Shopoff* stated the violations "may prevent [the attorneys] from enforcing the liens, but those violations do not

`

taint or preclude recovery" under the rest of the agreement. (*Id.* at p. 1524, fn. omitted.)

    *Sheppard, Mullin*, *supra*, 6 Cal.5th 59, in contrast, illustrates the type of situation where an illegal provision may render the entire engagement agreement unenforceable. There, a law firm represented a pipe manufacturer in a qui tam action, but also represented in other matters one of the public entities that was adverse to the pipe manufacturer in the qui tam action. (See *id.* at pp. 68-70.) The Supreme Court held that, because the law firm failed to obtain the pipe manufacturer's informed consent in violation of the Rules of Professional Conduct, the entire engagement agreement with the pipe manufacturer was unenforceable. (See *id.* at p. 87.)

    This case is closer to *Birbrower*, *Calvert*, and *Shopoff* than *Sheppard, Mullin*. The object of Horn's fee agreement, to be compensated on an hourly basis at an agreed upon rate for work performed in the *Hassid* action, was lawful. (See *Shopoff*, *supra*, 167 Cal.App.4th at p. 1524 ["The object of the contingent fee agreements—that is, to compensate [the attorneys] with specified percentages of the Recovery proceeds—remains entirely lawful."]; see also *Birbrower*, *supra*, 17 Cal.4th at p. 139 ["The object of [the parties'] agreement may not have been entirely illegal, assuming [the client] was to pay [the law firm] compensation . . . that did not amount to the practice of law in California."].) And unlike *Sheppard, Mullin*, where the law firm's representation of the client violated a rule of professional conduct, there was nothing impermissible about Horn's representation of Kling.

    In addition, like the agreements in *Birbrower*, *Calvert*, and *Shopoff*, the allegedly illegal portion of Horn's retainer agreement was severable from the rest of the agreement. (See Civ. Code,

21

§ 1599 ["[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful . . . the contract is void as to the latter [but] valid as to the rest"]; *Koenig v. Warner Unified School Dist.*, *supra*, 41 Cal.App.5th at p. 56 ["severance" of illegal portions of a contract "is favored in order 'to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement'"].) The retainer agreement did not require Horn to include block billing in his statements; it merely gave Horn the option of doing so. A court (or, in this case, the arbitrator) could have reviewed the fees, determined which, if any, Horn improperly billed, and distinguished those fees from the fees Horn properly billed. (See *Birbrower*, *supra*, 17 Cal.4th at p. 138 [""""[w]hen the transaction is of such a nature that the good part of the consideration can be separated from that which is bad, the Courts will make the distinction'"""]; *Koenig*, at p. 56 ["'California cases take a very liberal view of severability, [even] enforcing valid parts of an apparently indivisible contract where the interests of justice or the policy of the law would be furthered.'"].) Indeed, even where a statutory violation may prohibit recovery of fees for "substantial illegal services," the violation does not necessarily preclude recovery under the same agreement "for the limited [permissible] services . . . ." (*Birbrower*, at p. 139.)

To the extent Kling contends that, even if the entire retainer agreement was not illegal, the trial court should have vacated the award because the block billing provision was illegal, Kling's argument also fails. First, Kling forfeited the argument by not making it in the trial court. (See *Moncharsh*, *supra*, 3 Cal.4th at pp. 30-31 ["[f]ailure to raise the claim" that a portion of a contract that contains an arbitration agreement is illegal

22

`

forfeits "the claim for any future judicial review"; "we cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award"].)

Second, even if Kling had not forfeited the argument, this case is not one of the "limited and exceptional circumstances" justifying judicial review of an arbitrator's decision where a party challenges only a portion of a contract as illegal. (*Sheppard, Mullin, supra*, 6 Cal.5th at p. 77; see *Moncharsh*, *supra*, 3 Cal.4th at p. 32.) *Moncharsh* is again instructive. In that case an attorney left his law firm and continued to represent the firm's former clients. A dispute arose over the fees the attorney owed to the firm, and an arbitrator issued an award in favor of the firm. (*Moncharsh*, at pp. 6-7.) The attorney sought to vacate the arbitration award on the ground the provision in his fee agreement requiring him to share fees with the firm violated the Rules of Professional Conduct prohibiting unconscionable fees, certain fee splitting arrangements, and agreements restricting an attorney's right to practice. (*Id.* at p. 7.) The Supreme Court held the award was not reviewable, stating that "nothing in the Rules of Professional Conduct at issue in this case . . . suggests resolution by an arbitrator of what is essentially an ordinary fee dispute would be inappropriate or would improperly protect the public interest." (*Id.* at p. 33.) Similarly, no statute or ethical rule governing attorneys suggests it was improper for the arbitrator to resolve what was a routine fee dispute between an attorney and a client over the attorney's billing practices.

`

## DISPOSITION

The judgment is affirmed.  Horn's request for sanctions is denied.  Horn is to recover his costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.