[No. A074636. First Dist., Div. Three. July 30, 1998.]

Estate of EVELYN J. CONDON, Deceased.
MICHAEL R. CONDON et al., Petitioners and Appellants, v.
CAROLINE M. McHENRY, Objector and Respondent.

**COUNSEL**

Evans, Latham, Harris & Campisi, Dominic J. Campisi, James F. Feutz and Andrew Zabronsky for Petitioners and Appellants.

Paul J. Barulich for Objector and Respondent.

**OPINION**

**WALKER, J.**—Michael R. Condon and his attorneys, Michael Katz and his firm (the Elrod firm), appeal an order of the probate court denying Katz attorney fees for services rendered to the estate of Evelyn J. Condon. Michael, Evelyn's son, was appointed co-executor of her will with his sister, Caroline M. McHenry, the respondent to this appeal. Michael lives in Colorado; Caroline lives in California, as did their mother. The Elrod firm, which Evelyn J. Condon had retained to prepare her will and other documents effectuating her estate plan,[1] is in Colorado, where the will was prepared, and where Katz is licensed to practice law. Katz is not a member of the California State Bar.

---

[1] The estate planning documents included the last will and testament and first codicil designating Michael R. Condon and his sister Caroline M. McHenry as co-executors, a

Michael retained Katz and the Elrod firm to advise him as co-executor in the probate proceedings. Caroline retained counsel in California, James Cody and his firm (the Carr firm), to represent her as co-executor in the same proceedings. The record reflects that Katz did most of his work in Colorado, where Michael resides, communicating by telephone, mail, and fax with Cody and with other of the Condon siblings in California.[2] Michael also retained California counsel, Dominic Campisi and his firm (the Evans firm), to file papers and make appearances on his behalf in the probate court in San Mateo County.

In January 1996, fully three acrimonious years after the will was admitted to probate, the parties scheduled a hearing to approve the account, distribute the estate's assets, and award the fees owed the executors and their attorneys. Michael, through Campisi, filed a petition seeking compensation from the estate for Katz's ordinary and extraordinary legal services (see Prob. Code, §§ 10810, 10811). Caroline challenged the petition, asserting that some of the work for which Katz sought payment was done for Michael and their brother, Eugene, individually, not for the estate. She also contended that the sums Katz claimed were unreasonable.

The probate judge never reached the issues Caroline raised. Once he determined that Katz was not a member of the California State Bar and had not applied to appear *pro hac vice* (see Cal. Rules of Court, rule 983), he expressed his view that Katz was not an "attorney" within the meaning of Probate Code section 10810: "[A]s far as this court is concerned he's not a licensed legal practitioner . . . ." The judge adjourned the hearing, telling Campisi, "I will give you [two hours] to come up with some authority [for me] to order payment out of a California estate to a nonmember of the California bar for attorney's fees[.]"

When the hearing resumed, the judge denied Katz's hastily assembled application for leave to appear *pro hac vice*. After hearing argument, he concluded that, by serving as counsel for the co-executor of a will written for a California decedent, which devised California property, and was subject to

---

pour-over trust, a revocable life insurance trust, and a cross-purchase agreement (referenced in the will as a buy/sell agreement) which established the terms of the sale of the estate's major asset, Condon & Sons Lumber Co., to the decedent's three sons Eugene C. Condon, Jr., Thomas L. Condon, and Michael R. Condon.

[2]Generally the services rendered by the Elrod firm and Katz at issue here, included implementation of the buy/sell agreement concerning the business assets; resolution of litigation and disputes regarding the disposition of other estate assets, including settlement negotiations and the preparation of a written settlement agreement; resolution of threatened litigation and disputes regarding life insurance, trust issues and the preparation of accountings. The Elrod firm expended 315.8 billable hours for non-tax-related services, of which only 10 represented hours for services rendered while Katz was physically present in California.

California probate proceedings, Katz, a nonmember of the State Bar, had "practice[d] law in California" in violation of Business and Professions Code[3] section 6125. The court therefore refused to authorize payment of his legal fees. Michael and the Elrod firm timely appealed.

In our June 25, 1997, opinion, we reversed the probate court's order, holding that California Probate Code section 8570 et seq. allowed for such fees and that section 6125 did not proscribe them. Following our denial of a petition for rehearing, the Supreme Court granted review and ordered action on the cause deferred until disposition of *Birbrower, Montalbano, Condon & Frank* v. *Superior Court* (1998) 17 Cal.4th 119 [70 Cal.Rptr.2d 304, 949 P.2d 1] (*Birbrower*) then pending before it. Following its decision, the Supreme Court transferred review to us with directions to vacate our prior decision and to reconsider that case in light of *Birbrower.*

Following our review we conclude that Katz did not violate section 6125. He is therefore entitled under the Probate Code to ordinary statutory fees and to extraordinary fees in whatever amount the court deems reasonable for the services he rendered to Michael in his capacity as co-executor. (*Hatch* v. *Bush* (1963) 215 Cal.App.2d 692 [30 Cal.Rptr. 397, 13 A.L.R.3d 503].)

## THE LEGAL QUESTION

■ Section 6125 provides that "[n]o person shall practice law in California unless the person is an active member of the State Bar." Section 6126 states that "[any] person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active member of the State Bar, is guilty of a misdemeanor." Our courts have spun from these prohibitions a policy against awarding attorney fees to unlicensed practitioners of law.[4] (See *Agran* v. *Shapiro* (1954) 127 Cal.App.2d Supp. 807, 826 [273 P.2d 619].)

It is well settled in California that "practicing law" means more than just appearing in court. " '. . . [T]he practice of the law . . . includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be []pending in a court.' " (*People* v. *Merchants Protective Corp.* (1922) 189

---

[3]Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

[4]Nonmembers of the California State Bar may recover fees for services that nonattorneys may legally perform. (*Schroeder* v. *Wheeler* (1932) 126 Cal.App. 367, 378 [14 P.2d 903].) Under this rule, the probate court awarded the Elrod firm compensation for the time Katz spent doing tax work for the estate, including preparation of both federal and California estate tax returns and state and federal income tax returns.

Cal. 531, 535 [209 P. 363].) The parties agree that Katz "practic[ed] law" for Michael in his capacity as co-executor of his mother's will.[5]

 We must decide whether an out-of-state law firm, not licensed to practice law in California, violated section 6125 when it performed legal services by either physically or virtually[6] entering California on behalf of a Colorado client who was an executor of a California estate.

ANALYSIS

1. *The Probate Code Allows the Payment of Attorney Fees to an Out-of-state Attorney Rendering Services on Behalf of a California Estate.*

The Probate Code makes specific allowance for a nonresident, such as Michael, to serve as executor of a will subject to probate in California (Prob. Code, § 8570 et seq.), and our courts have made clear that "[t]he executor[] has the right to choose independent counsel to perform the necessary legal services on behalf of the estate." (*Estate of Effron* (1981) 117 Cal.App.3d 915, 930 [173 Cal.Rptr. 93] [executor's choice retained over unanimous objection of beneficiaries].) Here, Michael's choice was not only his to make, it was also reasonable; the Elrod firm did business where he lived and its principals had originally prepared his mother's estate plan. (See *ibid.* ["[p]resumably, the lawyer with familiarity of the decedent's property is a reasonable choice"]; *In re Estate of Waring* (1966) 47 N.J. 367, 377 [221 A.2d 193, 198] [approving retention of a New York attorney familiar with a New Jersey estate].)

Lending further support to our conclusion, the language of the Probate Code is mandatory; it provides "the attorney for the [executor] *shall* receive compensation" (Prob. Code, § 10810, italics added), making no exception for out-of-state attorneys, and our Supreme Court has held that the attorney's right to ordinary compensation is absolute (*Estate of Johnston* (1956) 47 Cal.2d 265, 272 [303 P.2d 1]). Moreover, our courts have approved without question the payment of statutory fees to an out-of-state attorney retained by a California executor. (See *Estate of Barreiro* (1932) 125 Cal.App. 752 [14 P.2d 786] [fees paid to a Mexican attorney who advised a California

---

[5]By appellants' uncontradicted account, Katz "represented his client—negotiating transactions, drafting agreements, researching law and giving legal advice[]—from his office in Colorado[, while r]outine probate administration filings were handled by [Caroline] and her California counsel." All filings made on behalf of Michael as co-executor of the estate were filed by the Evans firm, retained California counsel on behalf of Michael.

[6]We define virtual presence as used in our opinion as entry into the State of California by telephone, fax, e-mail, satellite or any other means of communication when a person outside of the State of California communicates with one within.

executor regarding Mexican matters].) And it is common practice for California probate judges to award fees to out-of-state attorneys rendering legal services in "ancillary" matters. In sum, though out-of-state attorneys have undoubtedly served California estates before this, and their services have surely entailed professional communications with people in California, there is nothing in the Probate Code or prior cases to suggest that they are disqualified from receiving statutory compensation.

2. *Section 6125 Does Not Proscribe an Award of Attorney Fees to an Out-of-state Attorney for Services Rendered on Behalf of an Out-of-state Client Regardless of Whether the Attorney Is Either Physically or Virtually Present Within the State of California.*

In *Birbrower, supra*, 17 Cal.4th 119, ESQ Business Services, Inc. (ESQ), a California corporation with its principal place of business in Santa Clara County, retained the New York law firm of Birbrower, Montalbano, Condon & Frank, P.C. (Birbrower), a professional law corporation incorporated in New York with its principal place of business in New York. Birbrower attorneys performed substantial work while physically present in California relating to the law firm's representation of ESQ. Neither the professional corporation nor any of the individual attorneys rendering services in California were licensed to practice law in California, although they were licensed in New York. ESQ's retention agreement with the Birbrower firm provided for the rendition of legal services to resolve a contractual dispute relating to a software development and marketing contract between Tandem Computers Incorporated (Tandem), a Delaware corporation having its principal place of business in California, and ESQ. The retention agreement specifically provided that: " 'The internal laws of the State of California (irrespective of its choice of law principles) shall govern the validity of this Agreement, the construction of its terms, and the interpretation and enforcement of the rights and duties of the parties hereto.' " (*Birbrower, supra*, at p. 125.) In a malpractice action brought by ESQ against the Birbrower firm, the attorneys asserted by way of a cross-complaint the right to receive their fees with respect to their legal representation performed in California. ESQ defended asserting that Birbrower was not licensed to practice law in California and thus was barred from collecting any fees.

While representing ESQ, Birbrower attorneys traveled to California several times, met in California with ESQ and its accountants and gave legal advice to ESQ. They negotiated directly in California with Tandem's representatives on numerous occasions in an effort to resolve the contractual dispute and attempted to initiate California arbitration proceedings.

The Supreme Court granted review for the purpose of determining "whether Birbrower's actions and services performed while representing

ESQ in California constituted the unauthorized practice of law under section 6125 and, if so, whether a section 6125 violation rendered the fee agreement wholly unenforceable." (*Birbrower, supra,* 17 Cal.4th at p. 127.) The issue articulated by the court was "whether an out-of-state law firm, not licensed to practice law in this state, violated section 6125 when it performed legal services in California for a California-based client under a fee agreement stipulating that California law would govern all matters in the representation." (At p. 124.)

In answering the question posed the court focused on the meaning of "in California" and stated: "In our view, the practice of law 'in California' entails sufficient contact with the *California client* to render the nature of the legal service a clear legal representation. In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state. Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law 'in California.' The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the *California client* that included legal duties and obligations." (*Birbrower, supra,* 17 Cal.4th at p. 128, italics added.)

In fleshing out the definition of the practice of law in California the Supreme Court in *Birbrower* states: "Our definition does not necessarily depend on or require the unlicensed lawyer's physical presence in the state. Physical presence here is one factor we may consider in deciding whether the unlicensed lawyer has violated section 6125, but it is by no means exclusive. For example, one may practice law in the state in violation of section 6125 although not physically present here by advising a *California client* on California law in connection with a California legal dispute by telephone, fax, computer, or other modern technological means. Conversely, although we decline to provide a comprehensive list of what activities constitute sufficient contact with the state, we do reject the notion that a person *automatically* practices law 'in California' whenever that person practices California law anywhere, or 'virtually' enters the state by telephone, fax, e-mail, or satellite." (*Birbrower, supra,* 17 Cal.4th at pp. 128-129, original italics and italics added.)

Implicit in the court's formulation of the rule is the ingredient that the client is a "California client," one that either resides in or has its principal place of business in California. This conclusion is not only logical, it comports with the reason underlying the proscription of section 6125.

In the real world of 1998 we do not live or do business in isolation within strict geopolitical boundaries. Social interaction and the conduct of business

transcends state and national boundaries; it is truly global. A tension is thus created between the right of a party to have counsel of his or her choice and the right of each geopolitical entity to control the activities of those who practice law within its borders. ▪ In resolving the issue of the applicability of section 6125 it is useful to look to the reason underlying the proscription of section 6125. *Birbrower, supra*, 17 Cal.4th 119 instructs that the rationale is to protect California citizens from incompetent attorneys stating: "California is not alone in regulating who practices law in its jurisdiction. Many states have substantially similar statutes that serve to *protect their citizens* from unlicensed attorneys who engage in unauthorized legal practice. Like section 6125, these other state statutes protect local citizens 'against the dangers of legal representation and advice given by persons not trained, examined and licensed for such work, whether they be laymen or lawyers from other jurisdictions.' (*Spivak* v. *Sachs* (1965) 16 N.Y.2d 163 [263 N.Y.S.2d 953, 211 N.E.2d 329, 331].) Whether an attorney is duly admitted in another state and is, in fact, competent to practice in California is irrelevant in the face of section 6125's language and *purpose*. [Citation.]" (*Birbrower, supra*, 17 Cal.4th at p. 132, italics added.)

▪ It is therefore obvious that, given the facts before us, the client's residence or its principal place of business is determinative of the question of whether the practice is proscribed by section 6125. Clearly the State of California has no interest in disciplining an out-of-state attorney practicing law on behalf of a client residing in the lawyer's home state.[7]

3. *The Applicability of the Birbrower Guidelines to This Case.*

It is apparent that both the facts and the issues in *Birbrower* are distinguishable from those presented in this case. Most significantly Michael R. Condon was a resident of the State of Colorado. Thus, the issue was not "whether an out-of-state law firm, not licensed to practice law in this state, violated section 6125, when it performed legal services in California for a *California-based client . . .*" (*Birbrower, supra*, 17 Cal.4th at p. 124), but whether an out-of-state law firm practicing law on behalf of a resident of the lawyer's home state violated section 6125 when that lawyer either physically or virtually entered the State of California and practiced law on behalf of that client.[8] Adopting the premise, as articulated in *Birbrower*, that the goal of section 6125 is to protect California citizens from incompetent or unscrupulous practitioners of law we must conclude that section 6125 is simply not applicable to our case.

---

[7]This, of course, does not apply to attorneys physically coming into California to practice law in our courts.

[8]During oral argument respondent asserted that Michael was a "California citizen" and thus was entitled to the protection of section 6125 because he was serving in the capacity of an executor of a California estate. We reject this argument since the purpose of section 6125 is to protect the "client" from untrained and unscrupulous attorneys regardless of the capacity in

The Elrod firm was retained by Michael to represent him in his capacity as coexecutor of the estate of Evelyn J. Condon. The firm's primary representation involved the implementation of the buy/sell agreement which was part of an estate plan drafted by the firm in Colorado. Its services involved the negotiation, settlement and drafting of documents resolving the dispute among the heirs of the estate leading to the sale of the estate's principal asset, the family business. The negotiation and discussion with beneficiaries of the estate and their attorneys in California occurred for the most part by phone, fax and mail while the attorneys were physically located in Colorado. It appears that communication between Michael and the Elrod firm took place entirely within Colorado.

 Under *Birbrower* one of the factors to be considered by the court in determining the applicability of section 6125 is whether the practitioner is plying "California law."[9] Nevertheless, our Supreme Court instructs that a person does not automatically practice law "in California" whenever that person practices "California law" anywhere. (*Birbrower, supra*, 17 Cal.4th at p. 129.) In the matter before this court there is no record reflecting that Katz was practicing "California law." Furthermore, that factor is not relevant to our holding. If indeed the goal of the statute is to protect California citizens from the incompetent and unscrupulous practitioner (licensed or unlicensed), it simply should make no difference whether the out-of-state lawyer is practicing California law or some other breed since the impact of incompetence on the client is precisely the same.

Also, it would be presumptuous of this court to assume that in a multistate business transaction where parties are located in diverse states and represented by counsel in those states, the lawyers are practicing "California law."[10] Furthermore, it is insular to assume that only California lawyers can be trained in California law. Surely the citizens of states outside of California should not have to retain California lawyers to advise them on California law. Finally, the fact that California law was not implicated in the Elrod

---

which the client was acting. Also, as we previously pointed out, the Probate Code makes specific allowance for a nonresident, such as Michael, to serve as executor of a will subject to probate in California (Prob. Code, § 8570 et seq.), and thus the out-of-state executor is subject to the same supervision and control of the California probate court as executors residing in California for the purpose of protecting those interested in the estate.

[9] We acknowledge that the common law of many of our states, including California, is indeed common. We thus assume the term "California law" means those principles of law unique to California in the sense that, although they may share commonality with the laws of other states, they are either enacted by our Legislature or are articulated by California courts.

[10] This assumes, of course, that the parties have not agreed to deal strictly with the principles of "California law." In the case before us, negotiations conducted by the Elrod firm culminated in a written agreement resolving the disputes which contains no reference requiring that "California law" be applied.

firm's representation of Michael R. Condon provides us additional impetus to conclude that the policy of protecting California citizens from untrained and incompetent attorneys has not been breached.

For the reasons stated herein we hold that Katz and the Elrod firm (licensed to practice law in Colorado) did not practice law "in California" within the meaning of section 6125 when its members entered California either physically or virtually to practice law on behalf of Michael (a Colorado citizen).

In light of the foregoing, we conclude that appellants did not violate our Business and Professions Code. Katz and the Elrod firm are, therefore, entitled under the Probate Code to ordinary statutory fees and to extraordinary fees in whatever amount the court deems reasonable for any services he rendered to Michael in his capacity as co-executor. (See *Hatch* v. *Bush, supra,* 215 Cal.App.2d 692.) Appellants are to recover the costs and reasonable attorney fees incurred in prosecuting this appeal. (*Estate of Trynin* (1989) 49 Cal.3d 868, 880 [264 Cal.Rptr. 93, 782 P.2d 232].)

Phelan, P. J., and Corrigan, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 4, 1998.