Filed 10/11/24  Thannhaeuser v. TKH Zuma, LLC CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTOPHER THANNHAEUSER, | B321283 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV11326) |
| v. | |
| TKH ZUMA, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed in part and reversed in part.

Kordestani Legal Partners, Harrison P. Kordestani; Sutter Maritime and Howard T. Sutter for Defendant and Appellant.

Myers Law Group and Robert M. Kitson for Plaintiff and Respondent.

————————————

Following a bench trial at which the court awarded Christopher Thannhaeuser judgment in the amount of $114,000 against his landlord TKH Zuma, LLC (Zuma), the trial court awarded Thannhaeuser $363,696.70 in attorney fees pursuant to an attorney fees clause in the parties' lease agreement. Zuma appeals the order awarding attorney fees, contending the trial court erred in awarding any attorney fees at all because Thannhaeuser did not comply with a provision in the lease requiring mediation as a condition precedent for litigation. Alternatively, Zuma contends the court erred in awarding attorney fees for the services of attorney David Williamson, who was not admitted to practice law in California, and the services of California attorney Robert Kitson, who, Zuma contends, aided and abetted Williamson's unauthorized practice of law. Zuma contends that even apart from the award to Williamson, the award is excessive and unreasonable for a routine landlord-tenant matter.

We agree that the trial court erred in finding that none of Williamson's work constituted the unauthorized practice of law in California. Although Williamson appears to have relied in good faith on two ethics opinions by county bar associations, those opinions are not the law, and a portion of Williamson's work for Kitson does not fall within any recognized exception which permits out-of-state lawyers to practice law in California. We see no evidence that Kitson knowingly aided and abetted Williamson's unauthorized practice of law. We see no error in the trial court's finding that Thannhaeuser satisfied the mediation notice provision of the lease agreement and no abuse of discretion in the amount of attorney fees awarded.

We order stricken the award of attorney fees for Williamson's work for Kitson on and after October 4, 2018. We remand this matter for the trial court to calculate the dollar amount that must be stricken. We affirm the order in all other respects.

## BACKGROUND

For several years before the dispute in the underlying case arose, David Williamson was personal counsel to Thannhaeuser and counsel for Concord Blue, an alternative energy company founded by Thannhaeuser. Concord Blue is based in Germany but has an office in Santa Monica, California. The underlying dispute arose from a residential lease Thannhaeuser signed for a house in Malibu, California. Williamson is located in New York and had assisted Thannhaeuser and Concord Blue with environmental law issues and New York business transactions.

In early 2018, Thannhaeuser and Concord Blue approached Williamson and asked for his assistance with possible mediation to resolve a lease dispute involving the Malibu property. Williamson is a member of the New York Bar but not the California Bar. After consulting the California Rules of Professional Responsibility and a State Bar of California Ethics "ethics primer," Williamson concluded that he could represent Thannhaeuser in the mediation.

Zuma rejected Thannhaeuser's mediation request. Williamson searched for California counsel and ultimately referred the potential litigation to attorney Robert Kitson. Concord Blue asked Williamson to continue to monitor the litigation on its behalf.

Relying on the California rules and *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119

3

(*Birbrower*), Williamson believed he could assist Kitson. "During the course of litigation, [Williamson] monitored the litigation on behalf of Mr. Thannhaeuser and occasionally assisted litigation counsel with respect to various research, strategy and case and document management matters over the course of over three years of litigation." Williamson stated that "[a]t no time did [he] manage the matter, make litigation decisions, appear in court, submit documents to the [c]ourt or event travel to California for this matter." Williamson's billing entries showed that he also drafted documents, including discovery documents, and provided advice to Kitson on a variety of topics related to the litigation.

After Thannhaeuser obtained judgment in his favor in the underlying litigation, he sought attorney fees under the lease agreement in this action. He sought recovery for 169.9 hours of work by Williamson at $750 per hour. The trial court reduced the hours to 115 total, at an hourly rate of $600. The total award was $70,429.64.

Thannhaeuser also sought recovery for the 375 hours worked by Kitson and his staff. The trial court approved all those hours, at the rate of $750 per hour for Kitson. The total award was $293,267.06. This appeal followed.

## DISCUSSION

"Generally, an order granting or denying an award of attorney fees is reviewed under the abuse of discretion standard of review. [Citation.] However, the determination of whether the criteria for an award of attorney fees and costs have been met is a question of law for our de novo review. [Citations.] As for any disputed factual issues, the trial court's findings are reviewed under the substantial evidence rule and must be affirmed if

4

supported by substantial evidence." (*Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1481 (*Soni*).)

I.      *Thannhaeuser Complied With the Mediation Notice Provision of the Lease.*

Zuma contends that pre-litigation mediation is a condition precedent for attorney fees under the lease and the trial court erred in finding that Thannhaeuser satisfied this condition. Where, as here, the facts are undisputed, we review de novo the question of whether the criteria for an attorney fees award have been met. (*Soni, supra*, 224 Cal.App.4th at p. 1481.) We see no error.

Section 39 of the lease provides: "Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. . . . If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action."

On April 11, 2108, Thannhaeuser's attorney Williamson sent an email to Zuma entitled "Mediation Notice." In the first paragraph of the email, Williamson states: "This notice constitutes a demand for mediation pursuant to para 39 of the Lease." In the second paragraph, he indicates that Thannhaeuser intends to file a lawsuit against Zuma. This paragraph also contains an offer to settle the dispute for approximately $200,000. In the third paragraph, he states: "**Please provide times during the week of April 16 when**

5

**Landlord (and its counsel if applicable) would be available for a telephonic mediation session**.  Alternatively, please indicate if Landlord intends to waive mediation.  Failure of the Landlord to respond in writing to this notice within three (3) business days shall constitute an irrevocable waiver of mediation."

On April 23, 2018, a document via email entitled "Re: Mediation Notice" was sent to Williamson in response.  The first sentence of the document reads: "As a *representative* of TKH Zuma, LLC (hereafter, 'TKH') I want to first begin this letter by responding to your overall inquiry, TKH Zuma <u>will not participate in any settlement agreement with Mr. Thannhaeuser</u>."  The letter is signed by Mary Anne Keshen "On behalf of TKH Zuma, LLC."

The trial court found that "Thannhaeuser's evidence shows that Thannhaeuser made a request for mediation and [Zuma] rejected mediation."  Zuma contends that Thannhaeuser's letter is a "strong-arm settlement demand" which sought only a telephonic conference, not mediation.  Zuma contends that it expressed its willingness and interest in mediation as required by the lease.

As Zuma itself points out, mediation is "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement."  (Code Civ Proc. § 1775.1, subd. (a); Evid. Code § 1115, subd. (a).)  As Zuma also points out, mediation is sometimes described as " '*a process whereby a professionally trained neutral facilitates the negotiations* between parties to help them settle a dispute they could not settle themselves.' "

6

The fact that Thannhaeuser made a settlement offer which would expire before mediation would likely begin has no significance. Zuma could accept the offer, in which case mediation would be unnecessary, or reject the offer and choose mediation in an attempt to settle the matter on more agreeable terms with the assistance of an outside party.

We see no ambiguity in Thannhaeuser's request for dates of Zuma's availability for a "telephonic mediation session." We see nothing in this request to indicate that a mediator would not be involved. Put differently, we see no reason to understand the request as indicating that the telephone call would involve the parties alone.

The time period set by Thannhaeuser was short, but the lease contains no details of a timeline for mediation or a method (in-person or telephonic). Whichever party was contemplating litigation was free to propose both details. If the other party wanted to mediate but felt the proposed timeline or method was unreasonable, that party could make a counter-proposal. That was not the factual situation here. Zuma clearly stated that it would not participate in a settlement agreement with Thannhaeuser. Because settlement is the goal of mediation, rejecting any possibility of settlement is necessarily a rejection of mediation.

We cannot agree with Zuma that it expressed its willingness and interest in mediation. Zuma cites to a letter sent by counsel for the former receiver, Theodore G. Phelps, to Thannhaeuser's counsel. Although it is not clear why Thannhaeuser initially contacted Phelps, Phelps was not a party to the underlying lawsuit; he was no longer the receiver for the property and had no authority to speak for Zuma. Zuma's own

response unequivocally rejected any settlement with Thannhaeuser, which necessarily is a rejection of mediation.

II.   *The Trial Court Erred in Finding Williamson's Assistance to Kitson Was Permissible Without California State Bar Membership.*

"A fundamental principle of California law, enshrined in the State Bar Act (Bus. & Prof. Code, § 6000 et seq.), is that no person may 'practice law in California' unless that person is an active member of the State Bar.  (Bus. & Prof. Code, § 6125 (section 6125).)  As a corollary principle, no person may recover compensation for practicing law 'in California' unless that person was a member of the State Bar or admitted *pro hac vice* at the time the services were performed, or the legal services fall within an exception."  (*Golba v. Dick's Sporting Goods, Inc.* (2015) 238 Cal.App.4th 1251, 1255 (*Golba*).)[1]

It is undisputed Williamson was a licensed attorney in New York but not in California.  Williamson did not seek admission pro hac vice for this case.  Zuma contends Williamson's work in this matter amounted to the practice of law in California, his work did not fall within any exception to the licensing requirement, and so the trial court erred in awarding Williamson $70,429.64 in attorney fees.  Zuma further contends Kitson aided and abetted Williamson's unauthorized practice of law and so is not entitled to attorney fees either.

"[W]here 'the facts are undisputed, we review de novo whether a person's conduct amounts to practicing law without a license.' " (*Altizer v. Highsmith* (2020) 52 Cal.App.5th 331, 337.)

---

[1]   Undesignated statutory references are to the Business and Professions Code.

8

"As for any disputed factual issues, the trial court's findings are reviewed under the substantial evidence rule and must be affirmed if supported by substantial evidence." (*Soni, supra,* 224 Cal.App.4th at p. 1481.)

We break our analysis into two time periods, April 3 through October 3, 2018 and October 4, 2018 through the end of the case. As we set forth in more detail below, we hold that Williamson's work for the first period, before local counsel was retained, was authorized under California Rules of Court, rule 9.47.[2] We see no applicable exception for Williamson's work once Kitson was hired.[3] Accordingly, the award for attorney fees for Williamson's work after October 3, 2018 must be stricken.[4]

A.    <u>Rule 9.47 Applies to Williamson's Activities from April 2018 Through October 3, 2018</u>.

Williamson sought reimbursement for work performed before California counsel Kitson was retained in this matter. The trial court noted generally that Williamson could have qualified as pro hac vice counsel under rule 9.47(c)(2). On appeal,

---

[2]    Undesignated rules are to the California Rules of Court.

[3]    Rules 9.43 through 9.48 provide a limited number of specific exceptions. It is undisputed that, apart from the initial exception under rule 9.47, Williamson's work for Kitson does not fall under any of exceptions in these rules.

[4]    We note that the trial court reduced the hours recoverable by Williamson from 169.9 to 115. It is not clear which specific hours the trial court struck. Accordingly, we remand this matter for the trial court to calculate the number of hours for which Williamson should be compensated for the time period April 3 through October 3, 2018.

9

Thannhaeuser contends that rule 9.47 covers Williamson's work before Kitson became primary counsel.  We agree.

Rule 9.47(c) provides in pertinent part: "An attorney meeting the requirements of this rule, who complies with all applicable rules, regulations, and statutes, is not engaging in the unauthorized practice of law in California if the attorney's services are part of: [¶] . . . [¶] (2) A formal legal proceeding that is anticipated but is not yet pending in California and in which the attorney reasonably expects to be authorized to appear."

On appeal, Zuma contends for the first time that rule 9.47 does not apply because Williamson "could never have had the reasonable belief he would receive pro hac vice admission . . . as Mr. Williamson failed to even apply for admission pro hac vice." Zuma contends that without filling out a *pro hac vice* application, Williamson would not have understood the pro hac vice qualifications or his fitness under those standards, and so could not assess the likelihood of acceptance by the State Bar.

There are more ways to learn about pro hac vice applications than by filling out an application.  Williamson stated in his reply declaration that he researched the issue of practicing law in California and believed that he could initially practice law in California under rule 9.47(c)(2) and, if mediation were scheduled to occur, he would seek pro hac vice admission "as might be required."  The extent of Williamson's knowledge about pro hac vice requirements and whether he had a belief he would be admitted are questions of fact; without those facts we cannot assess the reasonableness of any belief Williamson might have had.  Zuma forfeited this issue by failing to raise it in the trial court, and to develop a supporting factual record.

10

In its reply brief, Zuma contends for the first time that rule 9.47(c) is temporary and is only in effect until such time as the attorney's pro hac vice application is submitted and heard. Although we do not normally consider arguments made for the first time in a reply brief, we note that practice under rule 9.47 is limited temporally. As the last sentence of rule 9.47(c) makes clear: "The attorney whose anticipated authorization to appear in a formal legal proceeding serves as the basis for practice under this rule must seek that authorization promptly after it becomes possible to do so. Failure to seek that authorization promptly, or denial of that authorization, ends eligibility to practice under this rule."

An application for admission pro hac vice requires identification of local counsel. (Rule 9.40(d)(6).) At most, Williamson engaged in the solo practice of law in this matter for about three weeks, from April 3 through April 24, 2018, for a total of 21.2 hours. That time was spent investigating the facts of the dispute, giving the required mediation, and evaluating Zuma's response to the mediation notice. From April 25 through August 4, 2018, Williamson's time entries all relate to the search for California counsel and preparations to turn the case files over to such counsel.

We cannot fault Williamson for not locating California counsel in the three weeks he worked substantively on this matter, particularly when his time entries show that he was familiarizing himself with the facts of the case. Without more information, it is impossible to say when Williamson "should" have been able to find local counsel after his initial investigation was complete. His time entries indicate that he reviewed the fee agreement with Kitson on August 4, 2018. Given that

11

Williamson's time entries between April 24 and August 4 all relate directly or indirectly to the search for counsel, we cannot say he was dilatory. Thus, at the earliest, Williamson could have filed his application on August 5, and so this was the earliest he could have lost eligibility under rule 9.47. It is not entirely clear when Kitson was formally retained, but there are literally no time entries by Williamson from August 5 through October 3. Kitson had clearly been retained by October 4, when Williamson conferred with Kitson about the drafting of the complaint. Accordingly, we conclude that rule 9.47 applied to Williamson's activities through October 3, 2018.

Thannhaeuser contends that Williamson's loss of eligibility could have been cured by having Williamson "apply for *pro hac vice* status *nunc pro tunc*." Thannhaeuser relies on *Golba*, which considers the question of whether an order concerning pro hac vice admission could be corrected nunc pro tunc. (*Golba*, *supra*, 238 Cal.App.4th at p. 1265.) The function of a nunc pro tunc order is to correct a clerical error in a previously made order. (*Ibid.*) Here, there is no order to correct because there was no application by Williamson. (*Ibid.* [" ' "The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made." ' "].)

### B. An Out-Of-State Attorney's Provision of Mere Assistance Is Not a Stand-Alone Exception to California's Licensing Requirement.

We see no abuse of discretion in the trial court's factual determination that Kitson managed the action with assistance from Williamson. It is undisputed that Kitson made all the

12

appearances and signed all the pleadings and submissions.  It is similarly undisputed that Williamson undertook research and writing and gave advice to Kitson.  It was not an abuse of discretion for the trial court to find, based on the time entries and the court's observation of Kitson throughout the litigation, that Kitson directed the case "with input from Williamson."

The trial court found a blanket exception to section 6125 which permits an out-of-state attorney to practice law in California as long as the lead attorney in the case is licensed in California.  We cannot agree.  At most, this is one factor to be considered in determining whether the out-of-state attorney engaged in the unauthorized practice of law in California.

As the Supreme Court has explained: "In our view, the practice of law 'in California' entails sufficient contact with the California client to render the nature of the legal service a clear legal representation.  In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state.  Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law 'in California.'  The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations. [¶] Our definition does not necessarily depend on or require the unlicensed lawyer's physical presence in the state.  Physical presence here is one factor we may consider in deciding whether the unlicensed lawyer has violated section 6125, but it is by no means exclusive.  For example, one may practice law in the state in violation of section 6125 although not physically present here by advising a California client on California law in connection with a California legal dispute by telephone, fax,

13

computer, or other modern technological means." (*Birbrower, supra,* 17 Cal.4th at pp. 128–129.) The Supreme Court also pointed out "the obvious fact that other states' laws may differ substantially from California law. Competence in one jurisdiction does not necessarily guarantee competence in another. By applying section 6125 to out-of-state attorneys who engage in the extensive practice of law in California without becoming licensed in our state, we serve the statute's goal of assuring the competence of all attorneys practicing law in this state." (*Id.* at p. 132.)

Here, Williamson's stated reason for his work in this matter was to monitor and provide assistance to litigation on behalf of Thannhaeuser, a long-time client. Thus, Williamson had a direct relationship with Thannhaeuser, who was a California resident during the lease agreement which forms the basis of this dispute and alleged in his complaint that he was a California resident. Paragraph 43 of the lease provides "This Agreement is subject to California landlord-tenant law." Zuma was a California limited liability company, and the underlying real property is located in California. There can be no real disagreement that this litigation involves a California dispute which would require the application of California law in a California state court. Williamson's legal work was provided to California counsel for use in a California court. The work lasted for over three years. We have no difficulty concluding that Williamson was practicing law "in California" within the meaning of *Birbrower*.

Thannhaeuser contends the trial court correctly identified *Winterrowd v. American General Annuity Ins. Co.* (9th Cir. 2009) 556 F.3d 815 (*Winterrowd*) as persuasive authority. We do not

14

find the Ninth Circuit's brief discussion of *Birbrower* helpful, particularly in light of the significant factual differences between this case and *Winterrowd*.

In *Winterrowd*, the California clients hired California counsel. California counsel then entered into an agreement with an out-of-state attorney "to provide [California counsel] with assistance in prosecuting an action against the defendants, who, as it happens, asserted a meritless defense under federal law, namely, ERISA preemption. Thus, the case turned more on that issue than any issue regarding California law." (*Winterrowd, supra,* 556 F.3d at p. 822.) Further, the Ninth Circuit in *Winterrowd* found that the relationship between out-of-state counsel and California counsel "was for all practical purposes a partnership." (*Ibid.*)

As set forth above, the facts are significantly different here. This case involves California law, and there is nothing in the record to suggest that California counsel Kitson hired Williamson, or that there was a "partnership" relationship between the two. (If anything, something close to the reverse is true—Williamson assisted Thannhaeuser in hiring Kitson.)

The Ninth Circuit found that "*Birbrower* suggested that fees would have been awarded for the practice of law engaged in California by the out-of-state members of the firm if a 'firm attorney engaged in that practice was an active member of the California State Bar.'" (*Winterrowd, supra*, 556 F.3d at p. 822.) The full statement in *Birbrower* reads: "Birbrower engaged in unauthorized law practice in California on more than a limited basis, and no firm attorney engaged in that practice was an

15

active member of the California State Bar." (*Birbrower, supra,* 17 Cal.4th at p. 131, italics omitted.)[5]

We doubt the California Supreme Court intended to create an extensive exception to the California licensing requirement simply by noting that no attorney in Birbrower's firm was a member of the California State Bar. That is, we doubt that the Supreme Court intended to permit an out-of-state attorney to practice law in California without State Bar membership as long as one attorney in the out-of-state attorney's firm was a member of the California State Bar. Further, in 2004, the Supreme Court added several exceptions to the rules permitting an out-of-state attorney to practice law in California.[6] Membership in a partnership with licensed California lawyers was not one of those exceptions. If the Supreme Court had truly intended in *Birbrower* to create an exception for out-of-state attorneys who were members of a firm which included California attorneys,

---

[5] The court also relied on a subsequent statement by the California Supreme Court about Birbrower: "In *Birbrower,* we concluded that an out-of-state law firm was not entitled to a judgment enforcing its client's obligations under a fee agreement for legal services rendered in California, because neither the firm *nor its lawyers* were authorized to practice law in California. *Birbrower* is inapposite." (*Frye v. Tenderloin Housing Clinic, Inc.* (2006) 38 Cal.4th 23, 48–49.) At most this is dicta.

[6] The exceptions apply to an out-of-state attorney who is a registered legal aid attorney (Rule 9.45), registered in-house counsel (Rule 9.46), attorney practicing law temporarily in California as part of litigation (Rule 9.47), or nonlitigating attorney temporarily in California to provide legal services (Rule 9.48).

16

these rules would have been the time to formalize that exception. The Court chose, instead, to create more limited exceptions.

In addition, the Supreme Court explicitly rejected an exception based on a looser relationship between attorneys: "Contrary to the trial court's implied assumption, no statutory exception to section 6125 allows out-of-state attorneys to practice law in California as long as they associate local counsel in good standing with the State Bar." (*Birbrower, supra,* 17 Cal.4th at p. 126, fn. 3.)

On appeal, Thannhaeuser cites *Estate of Condon* (1998) 65 Cal.App.4th 1138 (*Condon*) which he describes as "instructive." *Condon* does not assist Thannhaeuser; if anything, it reinforces our conclusion that Williamson was practicing law in California under *Birbrower*.

The court in *Condon* applied *Birbrower* to the facts before it. As the court emphasized: "Most significantly [the client] was a resident of the State of Colorado." (*Condon, supra*, 65 Cal.App.4th at p. 1146.) Thannhaeuser, by contrast, was a California resident, before and at the commencement of the litigation. The out-of-state firm, retained by the out-of-state client in *Condon*, was retained to represent that client as "coexecutor of the estate of Evelyn J. Condon. The firm's primary representation involved the implementation of the buy/sell agreement which was part of an estate plan drafted by the firm in Colorado. Its services involved the negotiation, settlement and drafting of documents resolving the dispute among the heirs of the estate." (*Id*. at p. 1147.)

The court in *Condon* concluded: "[T]he fact that California law was not implicated in the [out-of-state] firm's representation . . . provides us additional impetus to conclude that the policy of

17

protecting California citizens from untrained and incompetent attorneys has not been breached." (*Condon, supra*, 65 Cal.App.4th at pp. 1147–1148.) Here, of course, we are concerned with a standard California Association of Realtors lease agreement (obviously not drafted by Williamson) and with active litigation occurring in a California court. California law was clearly implicated.

Williamson has indicated that he considered and relied on ethics opinions by two local bar associations: Orange County Bar Association Formal Opinion 2014-2 and San Diego County Bar Association Ethics Opinion 2007-1. These ethics opinions are in no way binding on us, and we do not find them helpful.[7]

We do not read the Orange County Bar Association opinion as broadly as Williamson does. That opinion states: "Whether Out-of-State Lawyer is engaging in the unauthorized practice of law in California, and whether California Counsel of Record and Law Firm are aiding in his unauthorized practice of law, will depend on the specific factual situation and the scope of Out-of-State Lawyer's involvement. The analysis will consider the significance of the contact with the client and the activity in the state, which may occur in person or remotely through the use of technology, as discussed in *Birbrower*. Assuming there is no significant involvement with Client, however, the mere act of Out-of-State Lawyer's ghostwriting a document for California

---

[7]    " 'Although not binding, opinions of ethics committees in California should be consulted by members for guidance on proper professional conduct. Ethics opinions and rules and standards promulgated by other jurisdictions and bar associations may also be considered.' " (*State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 656.)

Counsel of Record is not likely to constitute the unauthorized practice of law in California." (Professionalism and Ethics Com., Orange County Bar Assn. Formal Opn. No. 2014-1 (2014) p. 7 <https://www.ocbar.org/Portals/0/pdf/OCBA201401.pdf> [as of Oct. 11, 2024], archived at <https://perma.cc/2GF9-RHMU>.) This is, at best, an application of *Birbrower*, to a particular (hypothetical) set of facts. We do not find this application helpful, as the hypothetical facts are quite different from the facts in this case. As discussed above, Williamson was not merely an out-of-state lawyer hired by a California lawyer to draft documents. We have directly applied the reasoning of *Birbrower* to the actual facts of this case and have concluded Williamson was practicing law in California without a license.

We do not find the San Diego opinion persuasive on the law. The opinion relies on *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, a case which involves the prohibition on the corporate practice of law. The considerations behind this prohibition are unique to the corporate structure and the activities which constitute the unauthorized practice of law by a corporation which uses in-house attorneys to provide legal services to third parties are distinctively different.

C. <u>There Is No Basis to Conclude Kitson Knowingly Aided and Abetted the Unauthorized Practice of Law.</u>

Zuma contends Kitson aided and abetted Williamson's unauthorized practice of law. Zuma relies on California Rules of Professional Conduct, rule 5.5(a), which states: "A lawyer admitted to practice law in California shall not: [¶] . . . [¶] (2) knowingly assist a person in the unauthorized practice of law in that jurisdiction." Zuma has not shown that Kitson "knowingly" assisted Williamson in the unauthorized practice of

19

law.  As our discussion above shows, there is very little case law on this issue.  Existing law is evolving.  The trial court misunderstood the scant law on this issue.  At least two California county bar associations have issued opinions suggesting that Williamson's activities might not be considered unauthorized.

The two cases relied upon by Zuma are inapposite.  In both cases, the licensed attorneys knew that the unlicensed attorney could not practice law; there was no ambiguity on this point.  In *People ex rel. Herrera v. Stender* (2012) 212 Cal.App.4th 614 (*Stender*), the attorney had resigned with disciplinary charges pending and was not authorized to practice law.  In *Crawford v. State Bar* (1960) 54 Cal.2d 659 (*Crawford*), the lawyer was disbarred.

In both cases, the licensed attorneys helped the unlicensed attorney conceal his lack of authorization to practice law from clients.  In *Stender,* the licensed attorneys "provided the means for [the disbarred attorney] to continue his law practice [with his firm].  According to the clients' declarations, they were told, and led to believe by the conduct they observed, that [the unlicensed attorney] was their attorney, and it was [the unlicensed attorney] who developed the legal strategies for their cases, gave legal advice, and discussed and collected legal fees." (*Stender, supra,* 212 Cal.App.4th at p. 638.)  In *Crawford,* the disbarred lawyer's son, a licensed attorney, took over the father's practice, changed the office name and letterhead to mislead the public about the father's lack of a license and "[t]here was evidence that clients came to [the father] for services that could only be performed because of the arrangement with [his son]." (*Crawford, supra,* 54 Cal.2d at p. 666.)  Thus, in both cases, the licensed attorneys'

conduct demonstrated that they knowingly intended to assist the unauthorized practice of law.

The unauthorized nature of Williamson's activities was not as obvious in this case, and Kitson's conduct is consistent with a belief that Williamson fell within an exception to the licensing requirement. There is no indication that Kitson tried to conceal Williamson's activities in this case, or to mislead Thannhaeuser about Williamson's ability to practice law in California.

III. *The Trial Court Did Not Abuse Its Discretion in Determining the Amount of the Award.*

Zuma contends the trial court erred in awarding excessive attorney fees in the amount of $363,696.70 for a routine landlord tenant dispute.[8] Specifically, Zuma contends the trial court erred in "aligning with [Thannhaeuser's] wrongful allegation that [Zuma] unnecessarily prolonged litigation," giving rise to Thannhaeuser's attorney fees.

"Civil Code section 1717 provides that '[r]easonable attorney's fees shall be fixed by the court.' As discussed, this requirement reflects the legislative purpose 'to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions.' [Citation.] Consistent with that purpose, the trial court has broad authority to determine the amount of a reasonable fee. [Citations.] As we have explained: 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed

---

[8] Zuma has not argued that the trial court abused its discretion in its award of fees for work by legal assistants and paralegals. Accordingly, the award of those fees is affirmed.

unless the appellate court is convinced that it is clearly wrong" '—meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094–1095.)

The trial court found the fees were reasonable "for a case lasting nearly four years and that involved voluminous motion and other work to reach a final conclusion." The court's finding concerning the length and volume of work in this case is amply supported by the docket in this case.

The trial court found reasonable the number of hours sought by Kitson[9] as they were supported by Kitson's declaration describing the work he did, his time entries with descriptions of the work performed, and the trial court's own experience in this matter. We cannot say that 375 hours for a matter that lasted four years and involved a voluminous motion practice is unreasonable on its face.

The court found Zuma did not directly address the reasonableness of the hours requested. The same is true on appeal. Zuma makes no specific argument about any time spent by Kitson. Zuma has failed to show an abuse of discretion by the trial court.

The trial court found inaccurate Zuma's argument that Kitson's hourly rate was supported only by a declaration of an attorney acquaintance, Philip Shaknis. The trial court based its award of $750 per hour on Kitson's declaration and accompanying exhibits showing his years of experience and on the trial court's own experience. The trial court also noted there was evidence showing approval of similar fees by other California

---

[9] The trial court did reduce the number of hours recoverable by Williamson, from 169.9 to 115.

courts.  Zuma simply repeats its inaccurate argument about Shaknis on appeal.  Zuma has failed to show an abuse of discretion by the trial court.

## DISPOSITION

The award of attorney fees to Williamson for services rendered on and after October 4, 2018 is ordered stricken, and this matter is remanded to permit the trial court to calculate the amount of the reduced award.  The order is affirmed in all other respects.  Costs on appeal are awarded to respondent.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.